## PITKIN *against* BRAINERD, and others.

*Hartford,*
*June,*
*1825.*

Pitkin
*v.*
Brainerd.

Where the general owner of a vessel had let her for hire to another person, for a certain voyage, by a contract of charter-party, by which the charterer was to have, and in pursuance of which he actually had, the exclusive possession and the entire management and controul of the vessel, during such voyage, and was exclusively entitled to the profits thereof; it was held, that the general owner was not liable to the shipper for the non-delivery of goods shipped after the execution of such charter-party.

Any false colours, held out, in such case, by the general owner, calculated to induce a reasonable belief in the shipper, that the vessel was to sail on the account, and under the direction and controul of such owner, would render him liable : And it seems, that a fraudulent intention in the owner, if his conduct induced such reasonable belief, would not be necessary for this purpose.

But where the letting for hire, and the surrendry of the possession of the vessel and of the controul of the voyage, requisite to exempt the general owner from liability, were clearly proved; and it appeared, that the custom-house papers, shewing the general owner to be such, remained unchanged during the voyage, —that while the charterer was enquiring for freight, before the commencement of the voyage, he introduced the general owner to a merchant as owner of the vessel,—and that such owner, without disclaiming any concern in the voyage, enquired of the merchant, what the probability was of obtaining freight for the vessel ; it was held, that these facts did not evince such fraudulent intention in the owner, or induce such reasonable belief in the shipper ; and the jury having given a verdict subjecting the owner, the court granted a new trial, on the ground of its being a verdict against evidence.

In an action brought by the shipper, against the general owner, for the non-delivery of the goods shipped, to which the defence was, that the vessel had been let for hire for the voyage, to a third person, by a contract of charter-party, the plaintiff offered the testimony of the charterer, to prove, that by virtue of an agreement between the plaintiff and himself, the voyage was to be conducted on different principles from those stated in the charter-party. Held, that such testimony was inadmissible ; for if the agreement referred to was distinct from the charter-party, its contents could not be proved by parol ; and if it was the same as the charter-party, it could not be varied, construed or explained by parol.

This was an action on the case against the defendants, as owners of the sloop *Rising Sun,* for the non-delivery of goods shipped on board that vessel, from *Middletown,* in *Connecticut,* to *Petersburgh,* in *Virginia.*

The cause was tried at *Hartford, September* term, 1824, before *Bristol,* J.

On the trial, the sole question was, whether the defendants, as owners, were liable to answer in damages for the non-delivery of the property alleged to have been shipped on board the *Rising Sun.* The defendants introduced and proved to the jury a charter-party, made between them and *Jacob Wagner,* the master for the voyage mentioned in the declaration, before

the shipping of the goods in question. By this instrument, the owners, for the consideration of 200 dollars, agreed "to let or charter the said sloop to run from *Hartford* or *Middletown, Conn.* to *Norfolk* and *Petersburgh* in *Virginia ;* the said owners to put the vessel in good order for sea, and the said *Wagner* to sail at his own expense, exclusive of any company or copartnership between the above-mentioned parties whatever." The defendants claimed, that thereby it appeared, that they were in no respect liable for the conduct of *Wagner*, or for the loss sustained by the plaintiff.

In opposition to this claim, the plaintiff offered in evidence the deposition of *Wagner*, containing the following testimony : " In the fall of the year 1820, the owners of the sloop *Rising Sun*, of *Chatham*, agreed with me, that I should take the vessel, as master, to *Norfolk* and *Petersburgh,* if a sufficient freight could be obtained for those places. Accordingly, I went to *Hartford* to obtain a freight for her, and found encouragement to the amount of 400 dollars, or thereabouts. The owners then proposed, that I should allow them 200 dollars for their part of the freight, leaving me to man and victual, as usual, and also to pay pilotage and lightage, and other expenses, at my own risk and charge. Knowing about the amount of freight to be obtained, I agreed they should receive the 200 dollars, and I would receive the remainder to myself, and made a writing to that effect. I considered the agreement as an arrangement between me and the owners determining the amount of freight they should receive to make them satisfied, and that it would make but little difference with me in the result. The agreement was supposed to be known only to ourselves ; and I never considered it as affecting the interest of the shippers ; nor did I ever mention it to them. One of the owners sailed in the vessel with me, and, as I understood, to sell her if he could, or to calculate for further employment for her." The defendants objected to the admission of this deposition, on the ground that the deponent could not testify to any facts, which went to vary, explain or contradict the charter-party ; and also on the ground that as *Wagner* was master of the sloop, and had signed the bill of lading of the plaintiff's goods, he was an incompetent witness to swear to facts, which would establish the liability of the defendants, and thus exonerate himself. The judge overruled the objection, and admitted the deposition, on the ground that it conduced to prove a distinct agreement relative to the vessel from that claimed by the defendants.

It was admitted, that the defendants were the general own-
ers of the *Rising Sun ;* that the custom-house papers on board
the vessel during the voyage shewed them to be such ; and that
the goods specified in the declaration, on the 10th of *November,*
1820, were shipped on board that vessel, to be transported to
*Virginia,* agreeably to the terms of a bill of lading of that date,
in the usual form, signed by *Jacob Wagner,* as master.

The evidence in the cause was as follows.

*Denison Morgan* testified, That he was a merchant at *Hart-*
*ford,* and had a vessel of his own loading for *Virginia,* in *Octo-*
*tober,* 1820 ; that about that time, *Jacob Wagner,* acting as cap-
tain of said vessel, applied to him for freight for her ; that the
witness informed *Wagner,* that he was loading a vessel for the
same place, and that he had more freight than he could carry ;
that the witness also informed *Wagner,* that the plaintiff had
some freight for the same place, intended for his own vessel,
but which *Wagner* could probably have ; that *Wagner* asked
the witness to advertise said vessel at *Hartford* for freight, to
which the witness agreed ; that the witness, however, did not
put an advertisement into the papers of that week, as it was too
late to do it conveniently ; that some time in the course of the
next week, *Wagner* called at his store again, in company with
one of the owners of the vessel, *viz. Silas Brainerd,* and *Wag-*
*ner* then introduced him to the witness, thus—" Mr. *Morgan,*
let me make you acquainted with Mr. *Brainerd,* one of the own-
ers of the sloop *Rising Sun ;"* that *Brainerd* asked the witness,
what the probability was of his obtaining freight for said vessel,
to which the witness made much the same reply as before, and
again mentioned, that the plaintiff had some freight, which Capt.
*Wagner* probably could have ; that something was again said
about his advertising said vessel, either by *Wagner* or by *Brain-*
*erd,* and which of them, he could not say ; that he thinks this
was on *Tuesday* of the week after *Wagner* first called on him ;
that he did accordingly advertise for freight, in two newspapers
printed in *Hartford ;* that afterwards, and before the goods
were shipped, he saw the plaintiff, and informed him, that the
*Rising Sun* was a staunch vessel, and his goods would go in her
as well as in his own, and the plaintiff, therefore, consented,
that he should ship them in that vessel under the charge of
*Wagner ;* and that afterwards, at the date of the bill of lading,
the witness shipped them on board accordingly. This witness
also testified, that he knew from *Wagner,* that the defendants

were the owners of the vessel; but at what time he received this information, he could not tell.

The plaintiff introduced the deposition of *Jacob Wagner*, containing the testimony before stated.

*Erastus Brainerd*, a witness introduced by the defendants, testified, That *Wagner* had never been in the defendants' service; that said vessel had never before been employed in carrying freight, but had been principally employed in transporting stone from the defendants' quarry in *Chatham* to *New-York*; that one *Russell* had been employed as master in that business; that on the 27th of *October*, 1820, *Wagner* and the defendants, after several previous conversations on the subject, agreed that *Wagner* should hire said vessel for the voyage to *Virginia*, and that he should pay 200 dollars therefor; that they executed this agreement, it being written by this witness, who was present at the time it was executed; that said vessel was repaired by the defendants; that *Wagner* took the entire charge of the voyage in question, received the freight, employed the hands and labourers, and paid them; that the defendants had no agency whatever in getting said vessel to sea; that when *Silas Brainerd* went to *Hartford*, at the time mentioned by *Denison Morgan*, he did not go in company with *Wagner*, but went a different road, and, as the witness believed and understood, on other business; that he never, in any conversations between the defendants and *Wagner*, heard that freight to about the amount of 400 dollars, could be procured, and that the probable expense of navigating said vessel would be about 200 dollars, and that said agreement was entered into substantially, to secure the defendants the same amount they would receive were they to conduct the voyage themselves, as testified by *Wagner*; that said vessel, during the time she was loading, lay at *Middletown*, about a mile from the defendants' quarry, where they were customarily employed; that one of the owners sailed as a hand on board said vessel, on her voyage to *Virginia*, for the purpose of effecting a sale of her, after the completion of the voyage.

*Jeremiah Haling* testified, That *Wagner*, on the 11th of *November*, 1820, hired him to work on board said vessel, and that he did work five days, for which he was paid by *Wagner*; that the witness went as a hand; and that *Wagner* paid him and the other hands, after the vessel was cast away near *Norfolk*; that *Russell*, one of the owners, went as a hand, and was paid by *Wagner*, at the same time; and that he never knew or un-

derstood, that any of the defendants had any agency or concern in the voyage.

It was admitted, that the plaintiff's goods were not delivered; and no sufficient excuse for the non-delivery was proved.

On this evidence, in connexion with the facts admitted, the jury returned a verdict for the plaintiff. The judge, not being satisfied therewith, returned the jury to a second and third consideration; but they adhered to their verdict. The defendants moved for a new trial, on the ground that the deposition of *Wagner* was improperly received, and on the ground that the verdict was against evidence.

*Daggett* and *Stanley*, in support of the motion, contended, 1. That the evidence adduced on the trial, established the fact beyond doubt, that the entire management and controul of the vessel for the voyage, was transferred from the general owners to *Wagner*, the charterer.

2. That where this is the case, the charterer is owner for the voyage, and as such, is responsible to the shipper; the liability being shifted, by the charter-party, from the general owners to the charterer. *Hallett* v. *Columbian Insurance Company*, 8 *Johns. Rep.* 272. 276. *McIntyre* v. *Bowne*, 1 *Johns. Rep.* 238. *James* v. *Jones* & al. 3 *Esp. Rep.* 27. S. C. cited and stated *Abbott* 23, 4. *Gracie* v. *Palmer*, 8 *Wheat.* 632. *Frazer* v. *Marsh*, 13 *East* 238. *Christie* v. *Lewis*, 6 *Serg. & Lowb.* 186.

3. That the deposition of *Wagner* was inadmissible. First, its purport was, to put a construction upon an agreement in writing, which ought to be left to speak for itself; not to prove a distinct parol agreement. Secondly, *Wagner* was interested to cast the liability on the owners, and thus exonerate himself. This was the effect of his testimony, and the object for which it was introduced.

*N. Smith* and *T. S Williams*, contra, insisted, 1. That in relation to the principal question of fact submitted to the jury, there was evidence on both sides; and a new trial ought not to be granted because the verdict was not acceptable to the judge who tried the cause; nor because this court, in exercising the functions of a jury, may come to a different result. The verdict must either be against all the evidence in the cause, or must be manifestly and palpably against the weight of evidence, to authorize a new trial on the ground of this motion. *Anon.* 1 *Wils* 22. *Ashley* v. *Ashley*, 2 *Stra.* 1142. *Smith* d. *Dormer*

v. *Parkhurst & al. Andr.* 315. 326. S. C. 2 *Stra.* 1105. *Palmer* v. *Hyde,* 4 *Conn. Rep.* 426.

2. That the owners of a chartered vessel are liable to the freighter; although the charterer have the sole management of the vessel, and employ her for his sole benefit. *Rich.* v. *Coe, Cowp.* 636. *Starr* v. *Knox,* 2 *Conn. Rep.* 229. 230. *Williams* v. *Kelly* and *Sanger,* 2 *Conn. Rep.* 218. 220. n. *Parish* v. *Crawford, Abbott* 25, 6. (*Story's* ed.)

3. That *Wagner's* deposition was properly admitted. First, he was a competent witness; his interest, if he had any, being balanced; for if the plaintiff should recover of the defendants, he would be liable to them. *Phil. Ev.* 95. Secondly, the facts stated in the deposition were proper to shew the nature of the transaction, and to counteract the testimony of the defendants.

BRISTOL, J. The plaintiff's claim is founded upon the general liability of ship owners to respond in damages for the nondelivery of goods, which the master engages to transport; and if no sufficient reason exists for exempting the defendants from this liability, under the circumstances of the present case, the verdict ought not to be disturbed.

But it appears, that the defendants, *who were the general owners,* by a contract of charter-party, entered into previous to any contract made with the plaintiff for the transportation of his goods, had let the vessel to *Jacob Wagner* for the voyage in question; and that the defendants, by that contract, were to have no concern, either in *navigating the vessel,* or in the *profits of the voyage.* In pursuance of this contract of charter-party, the vessel was taken possession of, by *Wagner,* and the defendants had no concern in the voyage. The charterer of the vessel, according to the uniform language of writers upon mercantile law, became owner *pro hac vice;* and the general owners ceased to have any controul or authority over the vessel, during the period of the charter-party. If they are liable to the plaintiffs at all, such liability cannot be founded, either on the benefit which the defendants might derive from transporting the goods safely, or from any authority they possessed over the master and crew. It was immaterial to the defendants, whether *Wagner* obtained more freight or less: for the price which the defendants were to receive for the hire of the vessel, would be neither increased nor diminished, by the

amount of freight ; but depended entirely on the contract with *Wagner*.

It may be useful to review some of the leading authorities on this subject. In the case of *Parish* v. *Crawford*, 2 *Stra.* 1251. *Abbott* on *Ship.* 22. (or 25. of *Story's* ed.) the defendant, who was general owner, had let the vessel to *Fletcher*, for the voyage, who was to have the freight of goods ; but *Crawford* was to have the freight of *passengers;* and he appointed the master, and covenanted for his *good behaviour.* For the non-delivery of certain moidores shipped by *Parish*, the action was brought against *Crawford;* and the question was whether he was liable, or the shipper must look to *Fletcher* and the captain. The court decided, under the circumstances of this case, that *Crawford was liable ;* and this opinion is not opposed to that now pronounced in this case. The opinion delivered by Ch. J. *Lee*, shews the grounds on which owners are held liable, and impliedly admits, that had the circumstances of that case been like this, the owner would not have been responsible. "The true consideration," says this judge, "is whether, by any thing done, *Crawford*, in chartering it to *Fletcher*, has discharged himself from liability as owner. *Crawford*," continues he, "considers himself as governor of the ship, and so *covenants* for the government of it, during the voyage; and the ship was navigated by his master. Upon what foundation, then, is an owner chargeable, but upon these two considerations : First, the benefit arising from the ship, which is the equitable motive; secondly, the having of the direction of the persons who navigate it ? And it is upon these two things, taken together, that the implied contract arises."

*Neither* of these reasons is applicable to the case under consideration. The defendants are not benefitted by the freight, which *Pitkin* engaged to pay *Wagner* ; for the compensation to the defendants for the use of the vessel, was not dependent on the amount of freight *Wagner* might obtain, but was equally due, whether *Wagner* obtained a full freight, or took the vessel in ballast to *Virginia.* Unlike the case of *Parish* v. *Crawford*, in another particular very material, *here*, the defendants neither appointed the master, nor employed the crew ; and, of course, had no authority or controul over one or the other. *Neither* of the *two* grounds, relied on in the above cited case for making the owners liable, exists in the present ; for here is no benefit to the defendants arising from the freight of the plaintiff's goods ;

nor have the owners the direction and controul of those who navigated the vessel.

It is true, that in the case last referred to, it is observed by the Chief Justice, "that although *Crawford* had not *that freight*, which merchants pay for their goods, yet, as he has the benefit of the freight in general, he has that equitable *motive*, which makes him liable." It is probable, that this remark, uncalled for by the case under consideration, may have led to those serious doubts, which have sometimes been entertained respecting the decision itself. It is not easy to comprehend, how a ship-owner, having let his ship for a certain time, or a certain voyage, and for a stipulated price, which can neither be increased nor diminished, by the quantity of freight, or any other thing, in relation to the transportation, can still be *equitably* interested in the transportation of goods taken on board by the charterer. The one contract being perfect and independent of the other, the owner can have no motive either in obtaining freight, or in carrying the goods taken on freight. It is worthy of remark, that the papers of the vessel *continuing in the name of Crawford,* was deemed of sufficient importance to be even mentioned, as one of the grounds, upon which owners are held responsible to the shippers.

In the case of *Vallejo* v. *Wheeler*, *Cowp.* 143. and other cases, it is decided, that a deviation made by the master, with the knowledge of the *general owner*, and which, therefore, could not, according to the law of *England*, be barratry as against *him*, is, nevertheless, an act of barratry with reference to a third person, who had hired the ship ; and who was, therefore, considered as owner for the particular voyage. *Vallejo* v. *Wheeler, Cowp.* 143. *Christie* & al. v. *Lewis,* 6 *Serg.* & *Lowb.Abr.* 186. And, on the contrary, any act of the captain, with the privity of the charterer, cannot be barratry in reference to the latter. An attempt has been made to distinguish these cases from those where the question arises respecting the liability of owners for *supplies* furnished to the vessel, or for *goods shipped, and not transported* agreeable to the contract. Without fully discussing the grounds on which the *distinction* is attempted to be maintained, it may be proper to remark, that this *distinction* is totally rejected by *English* judges. In both the cases of supplies furnished to a vessel *when let to hire,* and of the charterer failing to convey goods on board the chartered vessel agreeable to the bill of lading, the general owners have been holden not responsible. In the case of *James* v. *Jones,* 3 *Esp. Rep.* 27.

it was decided, that the *general owners* were not liable for the *non-delivery* of articles shipped on board a vessel, which was let to charterers : and in the case of *Frazer* v. *French*, 13 *East*, 288. before the court of *King's Bench*, it was also holden, that the registered owners of a ship, having chartered her to the then captain at a certain rent for a number of voyages, were *not liable* for supplies furnished to the vessel by order of the charterer. The register acts, in that case, as the custom-house papers, in the present, were pressed into the service of the plaintiffs ; but lord *Ellenborough* observed, " that the register acts were passed *diverso intuitu ;* but to say that the registered owner, who divests himself, by the charter-party, of all controul and possession of the vessel for the time being, in favour of another, who has all the use and benefit of it, is still liable for stores furnished by the order of the captain, would be pushing the effect of those acts much too far. The question is, whether the captain, in this instance, who ordered the stores, were, or were not, the servant of the defendant, who is sued as owner ? And as they did not stand, at the time, in the relation of master and owner to each other, the captain was not the defendant's servant, and therefore the defendant is not liable for his act."

The supreme court of the *United States* has also adopted the same principles, and decided, that where the owner has parted with the entire controul and possession of the vessel, his liability as owner, for the time being, also ceases ; and vessels are placed on the same ground in respect to the owner's liability as other vehicles, such as wagons or stages used for the transportation of property.

These cases, though not of binding authority, are to be treated with great respect ; and I think the principles on which they rest, are as just and sound, as the source from which they proceed is respectable and enlightened.

The next question respects the admissibility of *Wagner's* deposition. This was admitted at the circuit, on the supposition that it conduced to shew, that the written agreement between *Wagner* and the defendants, respecting the vessel, was intended merely for the purposes of delusion ; and that a parol agreement was entered into between them, which embraced the written contract, notwithstanding the real contract between the parties. Upon this idea, it was decided, that third parties had a right to prove what was the real contract between the parties ; and that the voyage was conducted upon the princi-

ples stated in said deposition, and not in pursuance of the written contract. But upon a more careful examination of the deposition, it appears, that the argument of which *Wagner* speaks, was *reduced to writing.* If that agreement was not in truth the charter-party produced in evidence by the defendants, but another distinct written agreement respecting the same subject matter, such *written agreement* ought to be produced, and the contents of it cannot be proved by parol. But if *Wagner*, in his deposition, refers to the charter-party read in evidence by the defendants, as appears most probable, then his testimony was *inadmissible*, because it went to *vary, construe* or *explain* a written instrument; neither of which ought to be permitted to be done, by parol testimony.

It remains to inquire, whether the verdict, these principles of law notwithstanding, was warranted by any testimony in the case; or rather, whether the verdict is not so decidedly against the weight of testimony, that a new trial ought to be granted? No doubt, any false colours held out by the defendants, calculated to induce a belief that the vessel was to sail *on their account*, and *under their direction and controul*, ought to make the defendants liable to the plaintiff for the property shipped: and I am not certain, that any fraudulent intention on their part in holding out such colours, is necessary to be proved, in order to make them liable, provided their conduct is such as to induce a reasonable belief on the part of shippers, that the voyage is undertaken and prosecuted *by them.* But, in the present case, the court, after a careful examination of the testimony, bearing on this point, has come to the conclusion, that the facts relied on by the plaintiff, are not such, as either proceeded from any fraudulent motive, or ought to have induced the plaintiff or his agent to conclude, that the defendants had any direct concern in the voyage to *Virginia.*

It should be borne in mind, in considering this point, that the custom-house papers, which were on board this vessel, and which shewed the defendants to be *general owners*, did not prove that the defendants had any concern in this particular voyage. In deciding that the owner, when he lets his vessel for hire to the charterer, and surrenders both the possession of the vessel and controul of the voyage, is not liable to the shipper for property shipped on freight; the court has decided, that *this is all* which the owner need do, to exempt himself from liability to the shippers of goods. To say, then, that because the custom-house papers remain unchanged, and because from them the defend-

ants appear as general owners, that this is holding themselves out, as concerned in the voyage in question, would be in effect saying, that, though the owner may charter his vessel, and divest himself of all controul over the master and crew, still the manner in which this was done in the present case, and must necessarily be done in all others, would render the owner liable, as holding out false colours to the world. Such a *principle of evidence*, would at once defeat the *rule of law*, which we have endeavoured to establish ; and which we consider of no small importance to the prosperity of commerce and the security of ship owners.

It can hardly be pretended, that the introducing Mr. *Brainerd* to Mr. *Morgan* as one of the owners of the schooner, is a fact of any serious importance in the case. It was a mere act of civility ; and it could hardly be expected, that because he was introduced as one of the owners, this should have made it necessary for *Brainerd*, either then or at any subsequent time, to disclaim any *concern* in the voyage. His being an owner did not necessarily imply any concern in the voyage ; and of course, it was unnecessary, if not improper, to disclaim it.

The natural inquiry, which *Brainerd* afterwards made, relative to the probability of obtaining freight, is a circumstance entitled to a little weight. It was an inquiry, which a *passenger*, one of the *crew*, or even an entire *stranger*, might have made, without implying that the person making the inquiry had any concern whatever in the voyage : and it would be a most alarming consideration, if such an inquiry, without any thing else, should incur the heavy responsibility of being liable to every shipper of property. Would it not be more reasonable, if the shipper of property was not satisfied with the responsibility of the captain, and found that the general owners took no part, either in navigating the vessel, or procuring freight, that he should satisfy himself, by inquiry of the owner, whether the voyage was really on his account, or whether the vessel was chartered ? And if so, who, *pro hac vice*, was the owner ?

I would advise that a new trial be granted.

HOSMER, Ch. J. and BRAINARD, J. were of the same opinion.

PETERS, J. concurred with respect to the admissibility of *Wagner's* deposition, but dissented with respect to the liability of the defendants.

New trial to be granted.