JAMES SPROAT & al. versus JOTHAM DONNELL & al.

A bill of lading of lumber shipped on board a vessel, in the usual form, and what is called a clean bill of lading, would bind the person so undertaking, to carry it under deck, if there was no agreement, express or implied, to the contrary. But when there is a well known usage in reference to a cargo of this description, to carry it as convenience may require, either upon or under deck, and more especially when the shipper saw the cargo stowed on deck, and intimated no objection on that account, the bill of lading may import no more, than that it shall be carried in the usual manner.

Where a vessel is sailed by the master on shares, and he undertakes to carry lumber to a market, he and not the general owner of the vessel, is liable to the owner of the lumber, if any part of it is used as fuel during the voyage.

Goods of every description, including lumber, shipped on deck and lost by jettison, are not entitled to the benefit of general average.

THE action was assumpsit, and was brought to recover the value of six hundred sugar box shooks, alleged to have been shipped on board a schooner called the Nancy, owned by the defendants, and lost from the vessel in a voyage from Gardiner to Boston. In the first count the plaintiffs claimed contribution from the defendants for the losses sustained, upon the principles of a general average. The other counts alleged that the loss was occasioned by the misconduct and negligence of the defendants, or of the master and crew of the vessel.

The report of the trial before WHITMAN C. J. gives all the evidence introduced by the parties, respectively, and concludes thus : — The whole case is to be submitted to the Court, who are at liberty to draw any inferences from the testimony which a jury could properly draw, and who are to enter up such judgment by nonsuit or default, as they may deem proper.

The material facts, considered by the Court to have been proved by the evidence, are stated in the opinion of the Court.

The case was argued by

Evans and Sawyer, for the plaintiffs : — and by

Rundlett, for the defendants.

The counsel for the plaintiffs cited Thompson v. Snow, 4 Greenl. 264 ; Emery v. Hersey, 4 Greenl. 407 ; 1 Ware, 210 and 324 ; Taunton C. Co. v. Mer. Ins. Co. 22 Pick. 108 ;

4 Pick. 433; 1 Caines, 44; 4 Bingh. N. C. 134; 4 Campb. 142 ; 2 Cromp. & Jerv. 247 ; Hunt's Merch. Mag. Vol. 3, 432 ; 2 Phil. on Ins. 78 and 437 ; Marsh. on Ins. 466.

In the argument for the defendants these authorities were cited. *Tudor* v. *Macomber*, 14 Pick. 34; *Dodge* v. *Bartol*, 5 Greenl. 2£6 ; *Cram* v. *Aiken*, 13 Maine R. 229; Story on Bail. 339 ; *Wolcott* v. *the Eagle Ins. Co.* 4 Pick. 429; *Reynolds* v. *Toppan*, 15 Mass. R. 370 ; *Taggard* v. *Loring*, 16 Mass. R. 336 ; *Thompson* v. *Snow*, 4 Greenl. 264 ; *Cutler* v. *Winsor*, 6 Pick. 335; the Paragon, Ware's Rep. 322.

The opinion of the Court was drawn up by

WHITMAN C. J. — The plaintiffs claim to be remunerated for six hundred sugar box shooks, shipped on board the schooner Nancy, of which the defendants were the general owners, at Gardiner, to be transported to Boston ; which are alleged to have been lost by the negligence of the master and crew of said vessel ; or, if not so lost, that they were *jettisoned* for the preservation of the vessel and the residue of the cargo and freight, whereby the plaintiffs have become entitled to a contribution, upon the principle of a general average loss. The cause was opened to the jury, and, after the evidence had been developed, it was agreed that it should be withdrawn from the jury, and be submitted to the decision of the Court, upon a report of the evidence, with liberty to draw inferences from the facts proved, as a jury might.

It appears, that the shooks were laden on deck, and *not in* the hold. It appears that the vessel was constructed purposely to carry deck loads of lumber ; and that it is customary to carry such lumber on deck, as well as in the hold ; and the evidence is such as should be satisfactory, that the shooks in question were stowed and secured in the usual and customary manner ; and it appears, that the authorized agent of the owners of the shooks, who shipped them, repeatedly saw them as they were stowed on deck, and made no objection to their being so stowed, but merely, in one instance, questioned the strength of one of the stanchions, which was thereupon taken

out, and a better one inserted in its place. The captain signed bills of lading in the usual form, agreeing to transport the lumber, &c. the dangers of the seas excepted.

On the voyage to Boston, the vessel encountered tempestuous weather, which swept from the deck about three hundred of the shooks, together with the fuel, which had been provided for the voyage; and the residue of the six hundred, with the exception of about thirty, which were used for fuel, were thrown overboard, to relieve all concerned from the danger of shipwreck. The evidence adduced leaves no room to doubt, that all was done that was practicable, by the captain and crew, to save the vessel and property on board. We cannot, therefore, come to the conclusion, that there was any reason for accusing them of want of due care or precaution.

It is urged nevertheless, that the bill of lading, being in the usual form, and what is called a clean bill of lading, bound them to carry the shooks under deck; and it may be admitted, that such would be the case, if there were no agreement express or implied to the contrary. But when there is a well known usage, in reference to a cargo of this description, to carry it as convenience may require, either upon or under deck, the bill of lading may import no more than that it shall be carried in the usual manner; as held in the case of the Paragon, Ware's R. 322; and more especially would such be the case, where, as in this case, the shipper repeatedly saw the cargo stowed on deck, and intimated no objection on that account.

But it is insisted, that the defendants must be held answerable as wrongdoers for the thirty shooks used for fuel; and such would be the case, if they were the owners for the voyage. The evidence in the case, shows they were not. It appears, that the master of the Nancy, at the time of the shipment, had taken her in the way usual in regard to coasting vessels in this State; and in effect had chartered her for an indefinite period, agreeing to pay as and for the charter or hire, instead of a fixed price, a certain portion of her earnings. Such an hiring, though by parol, has been held to be an indefeasible

letting for hire, for every voyage, which the hirer shall have entered upon anterior to notice from the general owner of his intention to put an end to the contract. *Cutler* v. *Winsor*, 6 Pick. 335. And the Courts in this State have often ruled, that such a letting of a vessel to hire, renders the hirer owner *pro hac vice*, and answerable personally for his fidelity in the performance of contracts, which he may make, in reference to the employment of the vessel thus taken, and that the general owners are not in such case personally responsible therefor. *Thomson* v. *Snow*, 4 Greenl. 264; *Williams* v. *Williams*, 23 Maine R. 17. The remedy, therefore, for the thirty shooks used for fuel, is against the hirer, and not against the defendants. And the same might have been said in reference to negligence or improper stowage, if any thing of the kind had appeared.

We come now to the consideration of the point, principally relied upon for the support of the plaintiffs' claim against the defendants, viz: a contribution as and for a general average loss. In regard to this, the special ownership of the master, for the voyage, would not interfere with the liability of the general owners. They were bound to keep the vessel in due reparation. In case of any disaster rendering her innavigable they must have refitted her. So, if she became subject to a general average contribution, the claim therefor would be good against them. And if thrown on her beam ends, so that it should become necessary to sacrifice her masts, sails and rigging to save the hull and cargo, the owners, notwithstanding the letting, would be entitled to a general average contribution from the owners of the cargo.

It is, however, objected, that a jettison of articles laden on deck, forms no foundation for a claim of this kind. This is a question of some importance, to the navigating interests of the people of this State, as our great staple, lumber, is in a great measure, necessarily so carried. But the great principles of law, cannot be made to yield and accommodate themselves to every case attended with some little peculiarity. If it be a general principle, and no case like the one before us, has ever

formed an exception to it in our country, or in that from which we have derived our common law, we must be careful not to innovate upon it. And it must be admitted, that many cases have occurred in which it has been held, that no contribution in such cases is admissible. Two decisions of this Court, viz: *Dodge* v. *Bartol*, 5 Greenl. 286, and *Cram* v. *Aiken*, 13 Maine R. 229, explicitly so decide, without qualification or exception. And Mr. Justice Putnam, in *The T. C. Co.* v. *The M. Ins. Co.* 22 Pick. recognizes the same doctrine as settled law, as he had done before in *Wolcott* v. *The E. Ins. Co.* 4 Pick. 429. And in the 3d of Kent's Commentaries, § 240, it is so laid down in conformity to decisions in New York there cited. The law, therefore, in the States of Maine, Massachusetts and New York, would seem to be firmly settled against any such contribution. Under the above citation from Kent, he cites the case of the brig Thaddeus, 4 Martin's Louisiana R. 582, as being to the same effect. And the law is so laid down in Abbot on Shipping, 344, and in Phillips on Insurance, 333. The latter, however, speaks of some exceptions to the general rule, and names them particularly; but those exceptions in the authorities above cited, have not been considered as applicable to a case like the one before us. And moreover, it is understood, that the practice among merchants, underwriters, and average adjusters, has uniformly conformed to the same principle in the states of Maine, Massachusetts and New York, if not elsewhere. Indeed it has escaped our research, if any different principle or practice has obtained in any other part of the United States. Merchants, it is understood, protect their interests in such cases by insurance upon cargoes of lumber, and other articles, usually carried on deck; and underwriters understand that they incur the additional risk of not being entitled to the benefit of a general average contribution in case the deck load be thrown overboard for the benefit of all concerned. To adopt now a different principle, merely in this State, would manifestly be attended with perplexity and embarrassment. The principles of commercial law have a widely extended operation; and when once understood, and

the practice and habits of the mercantile community have been long adapted to and predicated upon them, there should be great hesitation in changing them, even by the whole of that community ; and much more so by a small section of it.

*Plaintiffs nonsuit.*