NEVADA, The (GRISWOLD v.). See Case No. 5,839.

NEVADA, The (SHERMAN v.). See Case No. 5,839.

NEVERS (PRESCOTT v.). See Case No. 11,-390.

## Case No. 10,132.

### The NEVERSINK.

[See Case No. 12,079.]

## Case No. 10,133.

### The NEVERSINK.

[5 Blatchf. 539.] [1]

Circuit Court, S. D. New York. Nov. 22, 1867. [2]

MARITIME LIENS — SUPPLIES AT FOREIGN PORT — AGENT OF MATERIAL MAN WHO RESIDED AT HOME PORT—PROOF OF APPARENT NECESSITY—SUFFICIENCY.

1. In the cases of Thomas v. Osborn, 19 How. [60 U. S.] 22, and Pratt v. Reed, Id. 359, the rule which requires evidence of an apparent necessity, existing at the time, for supplying, on the credit of a vessel, supplies furnished to her at a foreign port, in order to create a lien on her in favor of a material man, was not extended beyond its ancient strictness, as to the degree of proof required.

[Cited in The Grapeshot, 9 Wall. (76 U. S.) 137; The Washington Irving, Case No. 17,-244; The Eledona, Id. 4,340; The Maitland, Id. 8,979; Stephenson v. The Francis, 21 Fed. 720, 726.]

2. Where the master of a steamer had no funds to pay for coal, and her charterers, who owned her pro hac vice, resided in a foreign jurisdiction, and the coal was a necessary supply, and it was obtained by the master, and credit therefor was, in fact, given to the vessel and her charterers: Held, that a lien was created on the vessel therefor.

[Cited in The Eledona, Case No. 4,340; The Maitland, Id. 8,979; The Plymouth Rock, Id. 11,237; The India, 16 Fed. 263; Scull v. Raymond, 18 Fed. 550; The Charlotte Vanderbilt, 19 Fed. 219.]

3. The same thing was held in a case where the material man resided at the home port of the vessel and furnished the coal at the foreign port, through an agent there.

[Cited in The Maitland, Case No. 8,979.]

4. The sufficiency of the proof of an apparent necessity must, in every such case, rest in the sound judgment of the court.

5. General rules stated, for determining the existence of such apparent necessity.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, against the steamboat Neversink, to recover the value of coal furnished to her at New Brunswick, New Jersey, between the 12th of March, 1866, and the latter part of April, 1866. She made daily trips between the city of New York and New Brunswick, and was under a charter party to one Thornal and one Hine, who were the owners pro hac vice, one White being the general owner. The vessel was registered in the city of New York, where the general owner and the charterers resided. Thornal, one of the charter-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 10,132.]

ers, was master of the vessel. The district court decreed in favor of the libellants [Case No. 10,132], and the claimants appealed to this court.

Joseph E. Welch, for libellants.
Dennis McMahon, for claimants.

NELSON, Circuit Justice. That the coal supplied was necessary to enable the vessel to perform her daily trips, and earn her freight and passenger money, and that the credit for the supplies, as a matter of fact, was given to her and her owners, cannot be doubted, upon the proofs. The main ground of controversy is, whether or not there is sufficient evidence of an apparent necessity, existing at the time, within the rule of the maritime law, which justified the furnishing of the coal on the credit of the vessel. It has been said, or intimated, by very respectable authority, that this rule has been extended beyond its ancient strictness, in the recent cases of Thomas v. Osborn, 19 How. [60 U. S.] 22, and Pratt v. Reed, Id. 359, and that a greater degree of proof of this necessity is now required, by these adjudications, than had been previously exacted in the administration of this branch of the rule. I may be permitted to say, having written one of the opinions, and fully concurred in the other, after extended arguments at the bar, and the very full discussions by the judges in their conferences, arising out of the differences of opinion among them, that no such purpose existed on the part of the court or of any one of the justices; and a reference to the cases will show, that the opinion delivered in each of them was placed, and intended to be placed, upon ancient and settled authority. Some prominence, it is true, was given to this branch of the rule, and the propriety of properly enforcing it, in both opinions, for the reason, that, in several cases that had come before us, it had been overlooked or disregarded, and the decisions had proceeded upon the ground that proof of an apparent necessity for the credit constituted no part of the maritime rule. That error it was intended to correct, by recalling to the notice of the profession the rule as established by both the ancient and the modern authorities. I do not intend to go over this subject again, as I regard the two cases above referred to as laying down the principles which govern it. Applying those principles to the case in hand, I am satisfied that the proofs show an apparent necessity for the credit in question. The master had no funds to meet the payment for the coal as delivered, and the owners, the charterers, were not present, but resided at a distance, and, in the sense of the maritime law, in a foreign jurisdiction. The master was one of the charterers, but this does not affect his authority as master. He had no means, either as master or owner, which makes the apparent necessity for the credit to the vessel the stronger. I lay out of view the general owner, because the master was not his agent, and could bind him by no act of his. He could bind only the vessel and the charterers.

As to the sufficiency of the proof of this apparent necessity, no fixed rule, from the great diversity of the cases that arise, can be laid down in advance. It must necessarily rest in the sound judgment of the tribunal before which the proofs are presented. Good faith and fair dealing, in every case, are exacted on the part of the person furnishing the supplies, in every case; and the absent owner should be guarded against collusion by the master with the material man or the furnisher of supplies, and against an unnecessary tacit incumbrance upon his vessel.

Decree affirmed.

NOTE. Another case against the same vessel was decided at the same time, the libellants in which resided in the city of New York, the home port of the vessel. The coal was furnished to the vessel at New Brunswick, New Jersey, by the agent of the libellants. In his opinion in the case, Nelson, J., said: "Where the business of furnishing supplies of coal or other stores to vessels touching at a foreign port is carried on through an agent there, there would seem to be, in good sense, no distinction, so far as regards transactions at that port, between cases where the principal resides at that port and cases where he does not reside there. The agent represents the principal at the place of business. The supplies are furnished not at the home port of the vessel, but at a foreign port, and the reason for the remedy against the vessel exists with the same force as if the principal resided at the foreign port."