THE INDIA, her Engines, etc.

(*Circuit Court, S. D. New York.*   March 15, 1883.)

1. LIEN—SUPPLIES OF COAL—CHARTERED VESSEL.
   Where supplies are furnished at a foreign port, they are presumed to have been furnished on the credit of the vessel.

2. SAME—CHARTERER AS OWNER FOR VOYAGE.
   A charterer to whom is given the entire possession, control, and management, becomes the owner *pro hac vice*, although by the terms of the charter-party the general owner appoints the master and the crew.

3. SAME—AUTHORITY TO BIND VESSEL.
   When the general owners allow the charterers to have the control, management, and possession of the vessel, and thus to become the owners for the voyage, he must be deemed to consent that the vessel should be answerable for necessary repairs and supplies furnished at a foreign port for the prosecution and completion of the voyage.

In Admiralty.

*Ullo & Davison,* for claimants and appellants.

*Beebe, Wilcox & Hobbs,* for libelants and appellees.

WALLACE, J.   The libelants supplied the steam-ship with coal at the port of Philadelphia, upon the order of S. Morris Waln & Co., who were the agents at that place of Huser, Watson & Co., of New York city.   The steamer was a foreign vessel, owned in Hamburg, but had been chartered by the owner' to Huser, Watson & Co. for service between the United States and Brazil.   The steamer required the coal for an intended voyage for the charterers.   She was in the possession and under the control of the charterers, and the master was, by the terms of the charter-party, under the orders and directions of the charterers as regarded employment and agency.   The libelants did not rely exclusively upon the credit of S. Morris Waln & Co., or of the charterers, in furnishing the supplies, but relied in part upon the credit of the vessel.   Unless the charterers were the owners of the vessel for the voyage, and, in that capacity, were competent to bind the vessel to a lien in favor of the libelants, the libel cannot be maintained.   S. Morris Waln & Co. were not, in fact, the agents of the general owner; and, irrespective of testimony introduced for the first time upon this appeal, indicating that the libelant had reason to know that Waln & Co. were acting for the charterers, there was enough in the circumstances to require the libelants to ascertain whether Waln & Co. were authorized to represent the general owner before dealing with them upon such an assumption.

The affirmance of the decree of the district court may be satisfactorily placed upon the ground that the charterers were the owners of the vessels *pro hac vice;* that, as such, their contracts for necessary supplies bound the ship; and, as the supplies were furnished at a foreign port, they are presumed to have been furnished on the credit of the vessel. That a charterer to whom is given the entire possession, management, and control of the ship, becomes the owner *pro hac vice,*—although, by the terms of the charter-party, the general owner appoints the master and selects the mariners, as was the case by the charter-party here,—is not doubted; and the proposition is assumed to be correct by the appellees. Authorities which are controlling upon this court decide that when the general owner allows the charterers to have the control, management, and possession of the vessel, and thus to become the owner for the voyage, he must be deemed to consent that the vessel shall be answerable for necessary repairs and supplies to enable her to pursue her voyage, and that the special owner may bind the interest of the general owner in the vessel in this behalf. This doctrine was declared by Mr. Justice NELSON, in *The City of New York,* 3 Blatchf. 189, where the party furnished the supplies in a foreign port to the agent of the charterers, and knew of the charter, and that according to its terms the charterers were bound to furnish the supplies for the voyage.

In *The Freeman* v. *Buckingham,* 18 How. 182, when the general owner had allowed a third person to become the owner of the vessel *pro hac vice,* it was held that the former must be deemed to consent that the special owner could charge the vessel with a lien for the performance of a contract of affreightment. In neither of these cases was it supposed that the personal liability of the general owner was essential to the liability of the vessel. In the first case it was conceded that he would not be liable, and he would not have been liable in the latter. *Pitkin* v. *Brainerd,* 5 Conn. 451; *Cutler* v. *Winsor,* 6 Pick. 335; *Thompson* v. *Hamilton,* 12 Pick. 428; *Sproat* v. *Donnell,* 26 Me. 185. The responsibility of the general owner for contracts not made by him personally rests upon the law of agency, and, whether they are entered into by the master of the vessel or by some other person, are binding upon the general owner only when expressly or impliedly authorized by him. *Webb* v. *Pierce,* 1 Curt. 104, and cases there cited. The vessel may be liable upon contracts made by the master when the general owner would not be responsible. Such a case was that of *The Neversink,* 5 Blatchf. 539, in which the master was one of the charterers and owners *pro hac vice,* and where

it was distinctly affirmed that the master, although not the agent of the general owner and not able to bind him, could bind the vessel and the charterers.

There will be a decree for the libelants.

See *The Secret,* 15 FED. REP. 480; *The India,* 14 FED. REP. 476.