## THE AERONAUT.

### GEORGE v. THE AERONAUT.

*(District Court, S. D. New York. October 11, 1888.)*

MARITIME LIEN—SUPPLIES—OWNER PRO HAC VICE—PERSONAL CREDIT—HOME PORT—PRESUMPTION.

Material-men furnished supplies in New York to a vessel registered in Jersey City, but whose business home was in New York city, upon the order of charterers who were owners *pro hac vice,* and did business in New York, and

v.36F.no.8—32

who had no authority, as between themselves and the general owners, to pledge the vessel for supplies. No reference in the negotiations was made to the ship as a basis of credit. *Held*, that the legal presumption was that the credit was furnished to the charterers personally, in the absence of any evidence of a common intent to charge the ship, and that no maritime lien arose for the supplies.

In Admiralty.

The Aeronaut was owned by Mrs. White, who resided in Jersey City. Her business was transacted by her husband in New York, which was the headquarters of the vessel. The steamer was chartered to the Newcomb Rapid Transit Company, a New Jersey corporation, for $20 a day, payable in advance, to run between New York and South Norwalk, Conn. The office of the transportation company was in New York. The charterers were owners *pro hac vice*, and were to pay all the vessel's running expenses. Supplies to the amount of $180.94, principally for the engineer's department, were furnished the vessel by the libelants, in New York, between October 15 and November 4, 1887. All the negotiations and orders for the supplies were made at the office of the charterers by and with the general manager of the company. The libelants had no dealings with the master, nor was he known to them. In the negotiations no reference was made to the ship as a source of credit.

*Wilcox, Adams & Macklin*, for libelant.

*Watson & Wallis*, for claimant.

BROWN, J. The libelants made no inquiries as to whether the charterers owned or had chartered the Aeronaut. A year or two previous they had furnished supplies to her on Mr. White's order, when she was running under his direction; but as it is not clear that the libelants had any recollection of these prior transactions with the vessel at the time of their negotiations with the rapid transit company, I shall not consider whether or not they were fairly put upon inquiry as to the relations of the transit company to the Aeronaut. Independently of this consideration, however, and treating the libelants as ignorant of the charter, the lien cannot be sustained, since the dealings were all directly with the charterers, the owners *pro hac vice*, in person, and in the same state where the supplies were furnished to the ship, and there is no evidence either of any intent on the charterers' part to pledge the ship for these supplies, even if they had power to do so, or of any act of theirs to lead the libelants to such a supposition. As the charterers had received possession of the vessel on the condition that they should pay for all supplies, they had no actual authority themselves to create a lien upon the ship for such supplies, in the absence of exceptional circumstances, and when, as here, the ship being so near her legal home port, and in her actual business home, had no need of the supplies for any interests of her own or of her general owners. This point was directly adjudicated in this circuit in the case of *The Secret*, 15 Fed. Rep. 480. The same principle was adjudged in the case of *The Turgot*, 11 Prob. Div. 21. In the case of *The India*, 16 Fed Rep. 262, 21 Blatchf. 268, the supplies were not ordered

by the charterers in person, but by the agents of the ship, in a foreign port, and in a port of a different state from that of the charterer's residence, and business; and the observations of the court in that case are to be taken in reference to the facts of the case. In foreign ports, supplies furnished by material-men upon the order of the master or of the ship's agents without knowledge of any charter virtually forbidding any use of the ship's credit for such purposes, and without means of knowing of any such charter, are presumptively furnished on the credit of the ship. The general owner, in chartering the ship, takes the risk of such liens; because, under the general marine law, material-men, in dealing with the master or ship's agent in a foreign port, and in the course of her voyage, if they have no notice that the ship has means, are authorized to trust the ship, and are not bound to make inquiry beyond the necessities of the ship. Both parties are presumed to be dealing on the basis of the credit of the ship. But upon personal dealings with the general owners, or with charterers who are owners *pro hac vice*, for supplies to be furnished within the same port or state where the contract is made, the legal presumption is that the dealings are not with the ship, or upon her credit, but upon the ordinary personal responsibility of the owners, with whom the dealings are had, and no lien is, in such a case, sustained, unless a credit of the ship is proved to be within the intention of both parties, as was specially found by the court in the cases of *The James Guy*, 1 Ben. 112, 5 Blatchf. 496, and 9 Wall. 758, and *The Kalorama*, 10 Wall. 204. This subject, and the previous authorities bearing upon it, were fully considered by this court in the case of *Stephenson* v. *The Francis*, 21 Fed. Rep. 715, 719–723, and *Neill* v. *The Francis*, Id. 921. The same principles have been affirmed in numerous later cases in the courts of other circuits and districts. *The Norman*, 28 Fed. Rep. 383; *The Mary Morgan*, Id. 196; *The Cumberland*, 30 Fed. Rep. 449; *The Pirate*, 32 Fed. Rep. 486; *The Glenmont*, 34 Fed. Rep. 402, 404; *The Kingston*, 23 Fed. Rep. 200. The libelants' dealings in this case were all directly with the charterers in person. There is no legal presumption that aids the libelants in making out a maritime lien. They must stand upon the facts as they existed; and upon these facts, not only had the charterers, under the circumstances of this case, no authority to charge the ship for these supplies, but there is no evidence that they had the slightest intention of doing so. Nothing in the negotiations or in the ordering of the supplies points to the ship as an intended source of credit within the common intention; and the charterers could not have contracted on that basis in this case without fraud on the general owners. In its facts the case is almost precisely similar to the cases of *The Metropolis*, 8 Ben. 19, and *The Mary Morgan*, 28 Fed. Rep. 196; and, as in those cases, the libel must be dismissed; but, under the circumstances, without costs.