BAKER, (VOSS v.)  See Case No. 17,012.

## Case No. 785.

### BAKER v. WARD et al.

[3 Ben. 499.] [1]

District Court, S. D. New York.  March, 1868.

GOLD CONTRACT—CHARTER PARTY—FALSE REPRESENTATIONS—PARTIES.

1. Where a vessel was chartered for a voyage from New York to Havana, for the sum of $2,900, payable in gold on the proper discharge of the cargo in Havana, of which sum $2,201.50 in gold had been paid: *Held*, that the owners of the vessel were entitled to a decree for $698.50, without reference to any premium on gold.

[Distinguished in Hus v. Kempf, Case No. 6,944.]

[See note at end of case.]

2. Where a charter party of a vessel stated her to be "of the burthen of 427 tons, or thereabouts," but contained no other statement as to her carrying capacity: *Held*, that any other agreement as to her carrying capacity must be held to have been waived by the charterer, and that evidence of false representations by the owners as to her carrying capacity, and of the charterers being induced thereby to make the charter, was inadmissible.

[Cited in Rawson v. Lyon, 23 Fed. 108.]

[See Watts v. Camors, 10 Fed. 145.]

3. Where a charter party was signed by the libellant as master and agent of the vessel, and the charterers agreed in it to pay the charter money to him or his agent: *Held*, that a suit to recover the charter money was properly brought by the master alone, without joining the owners of the vessel as libellants.

[See Bangs v. Lowber, Case No. 840, and Clark v. Wilson, Id. 2,841.]

[In admiralty. Libel by Samuel Baker against James E. Ward and others on a charter party. Decree for libellant.]

Smedberg & Da Costa, for libellant.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Beebe, Dean & Donohue, for respondents.

[2] BLATCHFORD, District Judge.  On the 26th of July, 1866, the libellant, as master of the British bark Vivid, entered into a charter party at New York with the respondents, for the charter of the vessel to them, for a voyage from New York to Havana, for the sum of $2,900 charter money, payable in gold on the proper discharge of the cargo in Havana.  The libel avers the performance of the charter by the vessel, by the delivery of the cargo at Havana on or before the 25th of October, 1866, and that only $2,201.50 in gold has been paid on account of the charter money, and claims a decree for $1,005.84, in the lawful money of the United States, being the equivalent of $698.50, in gold, at the time of the commencement of the suit.

The answer sets up, that, at and before the making of the charter party, the libellant, in order to induce the respondents to enter into the charter, falsely and fraudulently represented to them that the vessel would carry and had already carried 3,000 round barrels of oil; that the respondents, relying upon such representations and believing the same to be true, chartered the vessel and loaded her for the voyage mentioned in the charter with all the cargo she could carry; that she would not carry 3,000 round barrels of oil, but only 2,600; that such representations were false and known by the libellant to be so; that the respondents sustained great damage therefrom; and that, by reason thereof, the charter was void.

The charter party, of which a copy is annexed to the libel and forms a part of it, contains no statement of the carrying capacity of the vessel.  It merely states, that the vessel is "of the burden of 427 tons or thereabouts."  The respondents, at the trial, offered to show, by evidence, the making by the libellant, and the falsity, of the representations before named; that such representations induced the respondents to enter into the charter party and to agree to pay a larger sum for charter money than they would otherwise have agreed to pay; that the libellant knew such representations to be false; and that, on the voyage in question, the vessel was loaded to her full capacity and carried only the bulk of 2,600 round barrels of oil.  The court excluded such evidence, on an objection to it by the libellant. The evidence was inadmissible, for the reason that, the charter party being in writing, parol evidence was not admissible to vary its terms, and that any stipulation or agreement, as to the carrying capacity of the vessel, which was not found in the written con-

[2] Since the decision of the supreme court of the United States, in April, 1871, on the legal tender act, [Knox v. Lee, 12 Wall. (79 U. S.) 457,] I have thought it best to publish here this decision, made by Judge Blatchford, in March, 1868, and omitted in its order, so that all the cases in this court, in which the gold question was involved, may be included in these reports.

tract, must be considered as having been waived by the respondents. 1 Pars. on Mar. Law, bk. 1, c. 8, p. 230; The Eli Whitney, [Case No. 4,345;] Pitkin v. Brainerd, 5 Conn. 451; Renard v. Sampson, 2 Kern. [12 N. Y.] 561.

The answer excepts to the libel on the ground that the libellant has no interest in the alleged cause of action set forth in the libel, and, therefore, cannot maintain this action, and on the further ground that the owners of the vessel should have been joined and made parties libellants in the action. The charter party was made with the libellant and describes him as master and agent of the vessel, and by it the respondents agree to pay the charter money to the libellant or to his agent. The respondents are, therefore, estopped from denying the right of the libellant to bring this suit, and it was not necessary to join the owners of the vessel as parties.

The libellant is, therefore, entitled to recover the amount unpaid on the charter money, namely, the sum of $698.50, with interest thereon, at the rate of 7 per cent. per annum, from October 25th, 1866. But he claims that he should have a decree for this amount in gold, or for an amount which is the equivalent, in legal-tender notes, of that amount in gold. I have heretofore considered this question, both on principle and on authority, and have held that, under circumstances such as exist in this case, the party suing is entitled only to a decree for the number of unpaid dollars due to him under his ·contract, and that the addition of the words "in gold," in the contract, is, in view of the legal-tender acts of February 25th, and July 11th, 1862, (12 Stat. 345, 532,) to be treated as surplusage, or, what is the same thing in effect, that the decree is to be for the debt at the number of dollars expressed in the contract, with the privilege to the debtor to discharge it in the legal tender notes. The Blohm, [Case No. 1,556;] The Mary J. Vaughan, [Id. 9,217.] If the libellant should have one of the alternatives which he asks for in this case, a decree for the $698.50, with interest, "payable in gold," (and he can have nothing more than his contract calls for, so many dollars in gold,) still the respondents would have the right to discharge the decree, dollar for dollar, in legal tender notes. The law is express to that effect. The United States notes are made, by law, "lawful money and a legal tender in payment of all debts, public and private, within the United States, except duties on imports" and certain interest due to and by the United States. A decree in this case for so many dollars, payable in gold, would be a private debt, to be paid within the United States, and it would be impossible to withhold from the respondents the privilege of paying it, dollar for dollar, in legal tender notes, without holding the statutes on the subject to be void, and without declaring that what the law-making power has said

shall be lawful money and a legal tender in payment of the debt, shall not be lawful money or such legal tender.

The libellant seeks, however, to evade the force of the legal tender act, by claiming, in his libel, that the number of dollars due to him in gold is "equal to the sum of $1,005.84, lawful money of the United States," and by asking a decree for the latter sum. The meaning of this averment must be merely, that the $698.50 in gold is equal to $1,005.84 in the United States notes which are made a legal tender by law. The gold and silver coins of the United States continue to be lawful money of the United States, and to be legal tenders to the extent prescribed by statute, as well since the passage of the acts making the United States notes legal tenders, as before. The silver dollar, containing the prescribed weight of silver, is still the unit, and is still lawful money·and a legal tender, according to its nominal value; and the double eagle, eagle, half eagle, and quarter eagle, containing severally the prescribed weights of gold, are still lawful money, and are still respectively legal· tenders, for twenty, ten, five, and two and a half of such units. The intent of the acts of congress was to put the United States note representing nominally one dollar, on the same footing, as to being lawful money, and a legal tender for a private debt, as the coined dollar. Wherever a debt exists which amounts to so many dollars in gold, an equal amount of United States notes, at their nominal value, will discharge it. If this were not so, the legal tender acts would be a juggle. They could be evaded without difficulty. All that it would be necessary to do would be to increase the amount of a contract debt to a number of dollars sufficiently large to deprive the debtor of the privilege which the acts intended to enforce upon him. But the court has no power to do this. The number of dollars is nominated in the contract. The words "in gold" mean no more than the words "lawful money." The contract is for so many dollars, lawful money, and the decree must be for that number of dollars, and it can be discharged in any money that is. lawful money and a legal tender. When the statutes say that the United States note of one dollar nominal value shall be lawful money and a legal tender for a private debt, within the United States, they mean that it shall be a legal tender, at its nominal value, for a debt amounting to one dollar in any other money that is lawful money within the United States, and that such debt may and shall be fully discharged by the payment or tender of such note. Some of the statutes of the United States, as, for instance, the act of January 18th, 1837, (5 Stat. 137, § 9,) in making certain coins of the United States a legal tender, say that they shall be legal tenders "according to their nominal value." Other statutes ·merely say that they shall be legal tenders. The statutes in regard to the

United States notes only say that they shall be "a legal tender." But the necessary meaning of all those statutes is, that the coins and notes shall be legal tenders according to the nominal values impressed on them, and which they exhibit to the eye. Now, to say that the respondents must pay $1,005.84, in United States notes, to discharge $698.50, of private indebtedness, payable in gold, would be to say that the United States note of one dollar, instead of being a legal tender at its nominal value, for one dollar of the $698.50 gold, shall be a legal tender at less than its nominal value, for such one dollar of gold, and that the indebtedness represented by such one dollar of gold shall not be fully discharged by the payment or tender of the United States note of one dollar. The decree would violate the express language of the acts of congress. Moreover, such a decree would violate the contract of the parties. The libellant contracted, at New York, for the payment to him, at Havana, of so many dollars in gold. He and the respondents did this with the full knowledge, on the part of both of them, that, so far as this contract provided for the creation of a debt which the respondents should ever be called upon to pay within the United States, the respondents would have the privilege of paying it in United States notes, dollar for dollar, at the nominal value of such notes. To deprive the respondents of this privilege, which the libellant voluntarily conferred upon them, would be to do what the court has no right to do. The libellant has resorted to this forum for the collection of his debt, and he must submit to the law of the forum.

It was urged by the counsel for the libellant, that two cases, recently decided by the supreme court of the United States, one at the December term, 1865, (Cheang-Kee v. U. S., 3 Wall. [70 U. S.] 320,) and the other at the December term, 1866, (Thompson v. Riggs, 5 Wall. [72 U. S.] 663,) establishes a contrary doctrine to that held by this court. I have examined those cases with care, and am unable to see anything in either of them that is in conflict with the views expressed in this decision.

The case of Cheang-Kee v. U. S., [supra,] only decides that, in a suit brought by the United States, to recover duties on imports, after the passage of the legal tender act of February 25th, 1862, [12 Stat. 345,] a judgment in favor of the United States, against the defendant, for "$1,388.10, payable in gold and silver coin, for duties," is a proper judgment; that the statement in the judgment, that the amount recovered is "payable in gold and silver coin, for duties," is merely a declaration of the legal effect of the judgment; and that such statement, although unnecessary, is strictly correct, and cannot affect the validity of the judgment, for the reason that it is a judgment for duties on imports, and that nothing but gold and silver coin is a legal tender for that description of indebtedness to the government. If any conclusion is to be drawn from that decision, as an authority bearing on the present case, it is a conclusion adverse to the view urged by the libellant, for it would seem to follow from the decision, that where, as in the present case, one of a private debt, something else, in addition to gold and silver coin, is a legal tender for the debt, a judgment for the amount of the debt, "payable in gold and silver coin," is improper.

The case of Thompson v. Riggs, [supra,] was this: At the time of the passage of the legal tender act of February 25th, 1862, Thompson had in the hands of Riggs, as a banker, on deposit, $6,600. The deposit was not a special deposit, but was a general deposit, and was subject to no condition or special agreement of any kind, but was made under such circumstances that Thompson parted with his title to the money, and such title became vested in Riggs, and Riggs became debtor for the amount to Thompson. Two years after the passage of the legal tender act, and when gold had risen to a premium of 57 per cent. above the value of legal tender notes, Thompson demanded the $6,600 in coin. Riggs tendered it in legal tender notes. Thompson then sued to recover a sum of money equal to the value in legal tender notes of $6,600 gold coin. The suit was not brought to recover any thing that was deposited after the passage of the legal tender act. There was a verdict and a judgment for Riggs, the defendant. Thompson then carried the case by writ of error to the supreme court, which affirmed the judgment. The language of the court (Mr. Justice Clifford delivering its opinion) ·in the case is to the effect, that, where a special deposit of bullion or coin is made with a banker, under such circumstances that the title to the thing or money deposited does not pass to the banker, but remains in the depositor, then the banker becomes the bailee of the depositor, and the latter may rightfully demand as his property the identical thing or money deposited; but that, where the deposit is general, and under such circumstances that the title to the money deposited, whether it is coin or legal tender notes, passes to the banker, the transaction is unaffected by the character of the money in which the deposit is made, and the banker becomes liable for the amount of the money as a debt, and can discharge the debt by any money that is by law a legal tender. The Bank of Kentucky v. Wister, 2 Pet. [27 U. S.] 318, 325. These views of the supreme court give no support to the claim made by the libellant.

The true doctrine on the subject is no where expressed better than by Pothier, (Traite du Contrat de Vente, note, 416, Cushing's translation, pp. 264, 265:) "It remains to be observed, in regard to the price, that it may be rendered in a money different from that in which it is paid. If it is paid to the seller in gold, the seller may repay it in

pieces of silver, or vice versa. In like manner, though, subsequent to the payment of the price, the pieces in which it is paid are increased or diminished in value, though they are discredited, and, at the time of the redemption, their place is supplied by new ones of better or worse alloy, the seller, who exercises the redemption, ought to repay, in money which is current at the time he redeems, the same sum or quantity which he received in payment, and nothing more nor less. The reason is, that, in money, we do not regard the coins, which constitute it, but only the value which the sovereign has been pleased that they shall signify; Ea materia forma publica percussa, usum dominiumque non tam ex substantia proebet, quam ex quantitate. D. 18, 1, 1. When the price is paid, the seller is not considered to receive the particular pieces so much as the sum or value which they signify, and consequently, he ought to repay, and it is sufficient for him to repay, the same sum or value in pieces which are current, and which have the signs, authorized by the prince, to signify that value." These views apply to all debts solvable in money, and to all money which the sovereign declares to be lawful money. Of course, I assume that the legal tender acts are constitutional and valid laws. I hold them to be so both on principle and on authority.

The libellant is entitled to a decree for $698.50, with interest from October 25th, 1866, and for the costs of the suit.

[NOTE. The act of 1862 (Rev. St. § 3588) provides that "United States notes shall be lawful money, and a legal tender in payment of all debts, public and private, within the United States except for duties on imports and interest on the public debt." Where a note is for dollars, payable by its terms in specie, the terms "in specie" are merely descriptive of the kind of dollars in which the note is payable, there being more than one kind of dollars current, recognized by law, and mean that the designated number of dollars shall be paid in so many gold or silver dollars of the United States. The act of February 25, 1862, in declaring that the notes of the United States shall be lawful money and a legal tender for all debts, only applies to debts which are payable in money generally, and not to obligations payable in commodities or obligations of any other kind. Trebilcock v. Wilson, 12 Wall. (79 U. S.) 687. A contract payable in gold and silver coin is an agreement to deliver coins of the standard weight and fineness, and it cannot be satisfied by a tender of United States notes. Bronson v. Rodes, 7 Wall. (74 U. S.) 229; Knox v. Lee, 12 Wall. (79 U. S.) 457; Butler v. Horwitz, 7 Wall. (74 U. S.) 258; Bronson v. Kimpton, 8 Wall. (75 U. S.) 444. Where it appears to be the clear intent of a contract that payment or satisfaction shall be made in gold and silver, damages should be assessed and judgment rendered payable in coin. Butler v. Horwitz, supra. See, also, Edmondson v. Hyde, Case No. 4,285. Where a contract is payable in gold coin, and the payee takes a judgment payable in currency, its amount should be for a sum equivalent in value to the amount of gold coin as bullion. Gregory v. Morris, 96 U. S. 619. The circuit court for the southern district of New York, in 1868, in awarding a decree on a bottomry bond payable in "United States gold," refused to allow a premium on the sum named in the decree in order to make such amount equal to gold. Cowan v. The Jacmel Packet, Case No. 7,154.]