## Rawson and others *v.* Lyon and others.[1]

*(District Court, S. D. New York. January 28, 1885.)*

1. REPRESENTATIONS—FRAUD—MUTUAL MISTAKE.

   The owners of the brig D. filed a libel against the charterer to recover a balance of charter money. The charterer answered that "at the time of the execution of the charter-party it was represented, warranted, and agreed by the master and agents of the brig that she was of 247 tons register, and would carry 2,700 barrels, or from 290 to 300 tons of logwood, on the faith of which the charter was accepted, but which agreement was by mistake inadvertently omitted from the charter;" and that the vessel brought home only about 225 tons of logwood. The written charter contained a clause that the vessel was of 247 tons register, which was true; and it was proved that she carried on her outward voyage 2,900 barrels, and on the homeward voyage brought only 225 tons of logwood, because so bulky that more weight could not be got under deck.

2. SAME—EVIDENCE.

   Evidence in support of the allegation of the answer as to the representations was taken under objection to its admissibility, and contrary evidence was offered in behalf of the brig.

   *Held,* that if the answer had charged fraud, the evidence would have been admissible under recent authorities, *(contra, Baker* v. *Ward,* 3 Ben. 499,) and so if a mutual mistake of fact were charged; that on the evidence there was no mutual mistake of fact, or any such representations as were meant or understood as a warranty that the brig would carry 290 or 300 tons of logwood.

3. SAME—EVIDENCE MUST BE SATISFACTORY.

   If the rule which makes the writing the highest evidence of the contract, and excludes evidence of prior conversations to vary it, or to attach to it new conditions or obligations, is to be relaxed in cases of fraud, actual or constructive, or of mutual mistake, the evidence showing such fraud or mistake must be entirely clear and satisfactory, and in cases of doubt the writing must prevail.

In Admiralty.

*Benedict, Taft & Benedict,* for libelants.

*Scudder & Carter* and *Geo. A. Black,* for respondents.

BROWN, J. This libel *in personam* was filed to recover the sum of $515.83, a part of the sum of $2,150, agreed to be paid by the respondents for the charter from the libelants to the respondents of the brig Dauntless, for a voyage from New York to Port au Prince and back in November, 1882. The answer alleges that "at the time of the execution of the said charter it was represented, warranted, and agreed by the master and agents of the brig that she was of 247 tons register, and would carry 2,700 barrels, or from 290 to 300 tons, of Jamaica log-wood; on the faith of which the charter was accepted, but which agreement was, by mistake, inadvertently omitted from the charter." Upon the trial it was proved that the brig, upon her outward voyage, took 2,940 barrels; but on her return voyage, though fully loaded, she could take but 225 tons of logwood, instead of 290 or 300 tons. Considerable testimony was also offered to show that in the negotiations leading to the execution of the charter-party, the brig was represented by her captain to be able to take from 290 to 300 tons of

[1] Reported by R. D. & Edward Benedict, Esqs., of the New York bar.

logwood. This testimony was objected to as inadmissible to vary the written charter, which stated the tonnage correctly, but contained no representation as to the number of barrels, or the tons of logwood, that she could take. The difficulty was not in her ability to carry 300 tons weight, but in her capacity to stow so much logwood between-decks.

The answer does not allege any fraud, nor that the representation alleged was fraudulently made, but only that the representation was untrue. The evidence is not even conclusive that the brig could not have carried 290 or 300 tons of logwood, if the wood were of sufficiently large sticks, or if it had been sawed so as to be stowed compactly. Had the answer charged false and fraudulent representations, as the means whereby the respondents were induced to enter into this charter-party, I should have regarded the testimony offered as admissible according to weighty authorities. *Cooper* v. *Schlesinger*, 111 U. S. 148, 152, 155; S. C. 4 Sup. Ct. Rep. 360; *Johnson* v. *Miln*, 14 Wend. 195; *Brown* v. *Tuttle*, 66 Barb. 169; *Thomas* v. *Beebe*, 25 N. Y. 247; *Bennett* v. *Judson*, 21 N. Y. 238; *French* v. *Newgass*, L. R. 3 C. P. Div. 163; 1 Story, Eq. § 193. So if there were any mutual mistake of fact which was the foundation of the contract. *Funch* v. *Abenheim*, 20 Hun. 1. In the case of *Baker* v. *Ward*, 3 Ben. 499, however, evidence similar to that offered in this case was excluded, even where the answer expressly alleged false and fraudulent representations.

I do not deem it necessary to consider this question anew in this court in the light of subsequent authorities, inasmuch as upon the evidence, which was provisionally received concerning the conversations between the parties prior to the execution of the charter-party, I must hold that no mutual mistake of fact is established, nor any such representations as were either meant or understood to be a warranty that the brig would carry 290 or 300 tons of logwood. *Hawkins* v. *Pemberton*, 51 N. Y. 198; *Durham* v. *Fire & Marine Ins. Co.* 22 FED. REP. 468.

On the part of the libelants the evidence is that the captain said that the brig had never carried any logwood, though he had once been to Jamaica for logwood with another vessel; but that the Dauntless would carry 300 tons of logwood "*if they could get it aboard.*" The broker testified in behalf of the respondents that the master said that the Dauntless *had* brought 300 tons of logwood from Hayti. It seems to me more probable that there was error in the recollection of the broker as to the precise language of the master, than that the master stated the downright falsehood of which the broker's testimony, if true, would convict him. The witnesses on this point are evenly balanced, and the circumstances favor the respondent's version of the conversation. The omission from the charter-party, of a positive stipulation for the carriage of 290 or 300 tons, well agrees with the libelants' testimony concerning the condition attached to the statement,

viz., that she would carry 300 tons "if it could be got aboard;" while, if made in the positive form alleged by the broker, there is no reason why the charter-party, drawn up by himself, should not have contained it. Moreover, within a week after the execution of the charter-party, in a conversation between the broker and the master, the broker desired the master to saw the logwood in order to have it packed more compactly, and thus be able to bring as large an amount as possible; and he offered to contribute something for that purpose. But the master declined to do anything about sawing, as not incumbent on him. Such a conversation seems to me less likely to have occurred had it been understood that the brig was at all events to bring from 290 to 300 tons of logwood, than if the amount she would bring was understood to be dependent upon her capacity for stowage. If the rule of law which makes the writing the highest evidence of the actual contract between the parties, and which excludes evidence of prior conversations to vary it, or to attach to it new conditions or obligations, is to be relaxed in cases of fraud, actual or constructive, or in case of mutual mistake, the evidence showing such fraud or mistake must be entirely clear and satisfactory to the court; and in case of doubt, at least, the writing, as it stands, must prevail.

The libelants are, therefore, entitled to the balance due according to the terms of the charter-party, with interest and costs.