## Case No. 17,693.

### The WILLIAM GILLUM.

[2 Lowell, 154.] [1]

District Court, D. Massachusetts. Sept., 1872.

GENERAL AVERAGE — JETTISON OF DECK CARGO — LIBEL AGAINST VESSEL.

1. A usage in the coasting trade to carry a part of the cargo, if heavy and imperishable, on deck, is reasonable. Such a usage found in this case.

2. If such a deck-load be jettisoned, the ship and freight are liable to contribute for the loss in general average.

[Cited in The John H. Cannon, 51 Fed. 47.]

3. This contribution may be recovered by a libel against the vessel for a total loss.

4. Whether the shippers of goods under deck, who did not actually assent to the shipment, would be liable to contribute, quære?

The libellants proceeded for thirty-three tons of pig-iron short delivered out of two hundred tons, shipped at Philadelphia, for the Bay State Iron Company at Boston, by the schooner William Gillum, under a bill of lading in the usual form. The answer set up that in a gale it had been necessary to throw overboard this part of the cargo, for the safety of the rest. Of the two hundred tons, fifty had been stowed on the deck of the schooner; and of the quantity jettisoned a little less than one-half was under deck, for which the libellants had received contribution in general average, and made no further claim; but they demanded payment in full for that which had been thrown over from the deck. The claimants introduced evidence of a usage in the coasting trade to carry a part of such heavy and imperishable goods on deck, say from one-eighth to one-quarter of a full cargo, and that it made the vessel easier in a sea. The libellants showed that the underwriters had not recognized such a usage, and that masters who carried such goods on deck often inserted a memorandum to that effect in the bill of lading, and that others were in the habit of insuring their deck cargo at the expense of the ship.

T. K. Lothrop and A. Lincoln, for libellants.

The simple and consistent rule of law is, that if a deck-load is carried by the master, without the consent of the shipper, the risk is the ship's. Granting that a general, uniform, and long-established usage might be evidence of consent, yet the proof in this case falls far short of these requisites. We rely on the following

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

cases, and especially the first: The Paragon [Case No. 10,708]; The Rebecca [Id. 11,619]; The Waldo [Id. 17,056]; Vernard v. Hudson [Id. 16,921]; Sutton v. Kettell [Id. 13,647]; 1 Pars. Shipp. & Adm. 185, 186; Fland. Shipp. §§ 191–195.

F. Goodwin, for claimants.

The origin of the law is usage. and that is founded on the reasons that a deck-load is in more danger than goods stowed in the hold, and that it hinders the working of the ship. But we prove here that a reasonable quantity of pig-iron on deck is in no danger of injury, and rather helps than hinders the working of the vessel; and cessante ratione, &c. Besides, the usage is valid, and varies the general rule. Chubb v. Seven Thousand Eight Hundred Bushels of Oats [Case No. 2,709]; The Neptune, 2 Marit. Law Cas. 456; 1 Pars. Shipp. & Adm. 352, 356, and notes; Valin, Comm. bk. 3, tit. 8, art. 12; Gardner v. Smallwood, 2 Hayw. (N. C.) 349.

After the case was submitted to the judge, he sent word to the parties that he should wish to hear argument on the question, whether, if the usage was proved, the ship and freight were liable to a general average contribution. Thereupon written notes were exchanged between the counsel and sent to the judge, in which it was insisted on the part of the libellants, and admitted on the part of the claimants, that there was such a liability; but it was urged, that if a decree were entered for the libellants on that ground it ought to be without costs.

LOWELL, District Judge. The evidence appears to me to establish the usage contended for by the claimants, which is, that in coasting voyages of this character, where there is a full cargo, consisting, in large part, of heavy goods, like pig-iron, a portion of the cargo, not exceeding one-quarter, is carried on deck; and that such a custom is reasonable, applying, as it does, only to merchandise which is not liable to be injured by wet, nor to be readily washed overboard, and as such stowage tends to make the vessel steadier and easier in rough weather. If such a usage is proved, and nothing more, it relieves the master and owners of the ship from liability for bad stowage. 3 Kent, Comm. 240; Abb. Shipp. pt. 4, c. 10, § 3; Chubb v. Seven Thousand Eight Hundred Bushels of Oats [supra]; Toledo Ins. Co. v. Speares, 16 Ind. 52; Dodge v. Bartol, 5 Greenl. 286.

Who is to bear the loss. when there has been a jettison of goods thus lawfully laden on deck, is not so clear. In the case cited from Greenleaf's Reports, the jury found not only a usage to stow on deck, but a usage "having the force of law," that the shipper of the deck-load took the whole risk of jettison, the ship not being liable even for contribution. And this law, thus found by a jury, has remained the law of Maine. Cram v. Aiken. 13 Me. 229; Sproat v. Donnell. 26 Me. 185. A like usage was said to exist in New York. Smith v. Wright, 1

Caines,.43. But I understand the law of that state to be otherwise at present, and that in that jurisdiction goods stowed on deck, in virtue of a general usage, are contributed for. Harris v. Moody, 4 Bosw. 210; s. c. 30 N. Y. 266. In England, on the other hand, a usage was proved in the timber trade, that the ship took the whole risk of the deck-load. Gould v. Oliver, 2 Man. & G. 208; and afterwards. in the same trade, the usage was shown to be that the ship and freight contributed, but not the goods under deck; and still another usage, that the underwriters on the ship did not undertake this risk, unless it were expressed. Between the two usages first mentioned it would seem more reasonable that the ship should bear the whole loss rather than the freighter; because the master, who decides what part of his cargo he will carry on deck, is the agent of the ship in that matter. The question whether the ship and freight ought to contribute to such a loss is open for decision in a libel for the whole value of the goods, because the greater includes the less. Dupont de Nemours v. Vance, 19 How. [60 U. S.] 162. In deciding it, I might perhaps rest upon the admission of the claimants' counsel; but as that may have been intended only for this hearing, and the cause is not unlikely to go farther, I have examined the point, and will express my views upon it.

The weight of modern authority favors such a contribution. It was formerly laid down by writers on this subject, in general terms. as the law of the commercial world, that the deck-load contributes to general average if saved, but is not contributed for if lost; but it is probable that this broad statement was intended only for those cases in which the deck-load was unlawfully carried, or, at most, when it was carried by a private arrangement between the particular shipper and the master. Thus Chancellor Kent, after stating the general rule, without qualification, in the text of his Commentaries. adds. in a note, after citing certain cases: "But if they be laden on deck according to the custom of a particular trade. they are entitled to contribution from the ship-owner for a loss by jettison. Gould v. Oliver, 4 Bing. N. C. 134." 3 Kent, Comm. (5th Ed.) 240, and note (a). The case of Gould v. Oliver, cited in this note, established the point in England, if it were not already put at rest by Da Costa v. Edmunds, 4 Camp. 142; and the same doctrine obtains in the more recent cases in the United States. It is considered by the text-writers to be the sounder opinion. See Hurley v. Milward. Jones & C. (Ir. Exch.), 224; Milward v. Hibbert, 3 Q. B. 120; Johnson v. Chapman. 35 Law J. C. P. 23; Merchants' & Manufacturers' Ins. Co. v. Shillito, 15 Ohio St. 559; Gillett v. Ellis, 11 Ill. 579; Toledo Ins. Co. v. Speares, ubi supra; Meaher v. Lufkin. 21 Tex. 383; besides the case above cited from New York; Phil. Ins. §§ 460. 1282; 1 Pars. Shipp. & Adm. 354, &c.; Marsh. Ins. (5th Ed.) 432; Arn. Ins. (3d Ed.) 776; Abb. Shipp. pt. 4, c. 10, § 3, and Mr. Justice Shee's note to English edition, and Mr. Perkins' note to American edition.

These writers give all the reasoning and learning on the subject. I have seen no better statement than that of the superior court of Connecticut, in 1773: "The court determined that although stock upon deck is more exposed to danger, and in a storm exposes the vessel to greater risk, than goods in the hole, yet as it is the universal custom to ship goods in the hole, with stock upon deck, when the stock upon deck is thrown overboard for the express purpose of saving from destruction the cargo in the hole. it is but reasonable that the cargo saved should bear a proportion of the loss which was the price of its ransom." Brown v. Cornwell, 1 Root, 60. I am aware that some of the late cases are of shipments by steamers which are so built that the main deck is the ordinary and proper place for the bulk of the cargo to be stowed, so that it has been held, as matter of law, that the rule against deck-loads did not apply to them. The Neptune, cited by the claimants, and reported on appeal [Case No. 10,118]. But the cases cited from the courts of Indiana and of Texas are not of that kind; and in most of the others the usage was proved, and was the foundation of the decision, and the character of the vessels was relied on only to show that the usage to carry goods on deck was reasonable, and must have been known to the shippers by such vessels. In Lawrence v. Minturn, 17 How. [58 U. S.] 100. and Slater v. Hayward Rubber Co., 26 Conn. 128, the question of contribution was expressly reserved.

The only recent decision which denies contribution was one in which the deck-load was shipped by special arrangement and not by usage. The Milwaukee Belle [Case No. 9,627]. Judge Miller there relies very much on Lawrence v. Minturn; but he overlooks the fact that in that case Mr. Justice Curtis carefully omitted to decide the point. See 17 How. [58 U. S.] 115. "His right to contribution is not involved in this case." All that I now decide is, that the ship and freight must contribute to the loss. The other interests are not represented here; and the general average adjustment. which was made up and acquiesced in by both the parties to this suit, relieves the other shippers. It was argued by the claimants that it went farther, and estopped the libellants from making any claim against the ship and freight; but the evidence was. that all those rights were expressly retained, and that the settlement of the average was made without prejudice to this suit. A late writer on average, speaking of the practice of underwriters in England. which he does not think entirely satisfactory (because, as I suppose. it does not give sufficient weight to the law as laid down in Gould v. Oliver and Milward v. Hibbert). says: "The loss of goods and freight thrown overboard from deck is apportioned on the value of the ship, the net freight, and the cargo, including what is jettisoned. If there be goods below deck, the property of an innocent shipper, i. e., one who has no goods on deck, and was not consulted about the vessel carrying a deck-load, his value is to be omitted from the contribution, or, by

the practice of some, is brought into the apportionment, but the ship pays that shipper's quota." Hopk. Av. 37. The former of these modes appears to be appropriate to the present case; because, as I say, the parties, here, by their settlement. released the other shippers, who, perhaps. would be liable upon proof of such a custom as I find to be proved here. At all events. I see no reason why the ship should bear their share of the loss. nor do I understand that either party contends for this.

It will be easy for the parties, I suppose, to make their settlement on the basis of this opinion. I see no reason why the libellants should not recover their costs. It is true that they demanded more than they will recover; but the supreme court have decided that they may properly recover a general average loss in such a suit; it is, therefore, like any other case in which a recovery is had of part of the sum demanded. To stop costs, the claimants should have tendered the amount due for their share of the loss; especially so in this case, because the course of their defence is such that they can hardly deny, and, as soon as called on to argue the point. they at once admitted a liability for this lesser amount; for they contend the usage is notice to all the world, and puts these goods on the precise footing of under-deck goods.

Interlocutory decree that the libellants recover a general average loss, to be adjusted hereafter if the parties do not agree.