## THE HETTIE ELLIS.[1]

### (Circuit Court, E. D. Louisiana. June 9, 1884.)

1. DECK-LOAD.

With reference to cargo stored on deck, the ship is not liable as a common carrier, but its liability in this case is limited to ordinary care, *i. e.*, such degree of care as a prudent owner would exercise. If the loss was the result of the negligence, want of skill and care, of the master, the liability of the vessel is established. *Lawrence* v. *Minturn*, 17 How. 111, followed; *The Hettie Ellis*, *ante*, 393, affirmed.

2. SAME—JETTISON.

In a case where a vessel, built with a view of carrying the major part of her cargo on deck, running in a trade where it is customary and necessary to load the major part of the cargo on deck, so trading and so loaded, is compelled by a peril of the sea to jettison part of her deck-load to save the ship and remaining cargo, *held*, the shipper whose goods have been so destroyed for the common safety is entitled to just remuneration. In such a case the whole reason for exempting deck cargo from the benefit of general average fails, and the rule itself ought to fail.

Libel for Short Delivery of Cargo of Lumber shipped from Tensas river Alabama, to New Orleans, Louisiana.

*E. H. Farrar*, for libelants.

*James R. Beckwith*, for claimants.

PARDEE, J. Under the evidence in the case there is practically no dispute that the quantity and quality and value of lumber, as claimed by libelants, was shipped by the Hettie Ellis, and that there was the short delivery as claimed. It is agreed that there was no contract between the parties, save as to rate of freight, and such contract as the law implies in cases of shipment. Who loaded the craft, and whether the large deck-load was with or without the consent of the shipper, does not appear. There is evidence which, taken with the description of the craft, is sufficient to show that on her and like craft in that trade, it was usual, customary, and necessary to load the major part of the cargo on deck. The responsibility of the Ellis under the circumstances was that of a common carrier. Where there is short delivery by a common carrier the burden is on him to excuse himself. And it makes no difference in this respect whether the goods were taken on a vessel as deck-load with the consent of the shipper, or were shipped between the decks. If the goods are shipped as deck-load, the carrier may have excuses that would not avail him

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

otherwise, but still the carrier must excuse himself for short or non-delivery.

Here the claimant, owner, says first that, by the custom of the trade over the lake and across Mississippi sound, bills of lading were not given, and that all shipments were understood to be at shippers' risk as to perils of the sea. The proof on this point is not full and satisfactory, but is conflicting, two witnesses being for, one non-committal, and one against, the alleged custom. Taking it, however, to be fully proved that such custom exists and formed part of the contract between the parties, we come to the main defense of the case, that the lumber was lost through the perils of the sea.

Under the evidence it is very questionable whether the lumber was thrown overboard to save the ship, or was washed overboard in the storm. The master swears that it was thrown overboard, and the protest signed by the master and one of the sailors says that it was washed overboard, while the sailor swears that part was washed over and part thrown overboard. If it is important for the court to find out this fact, the finding is that the lumber was thrown overboard, for it does not seem possible that the entire deck-load could have been washed overboard without greater damage to the ship than the evidence shows she suffered. There is no doubt under the evidence that when the lumber was lost there was a severe storm and violent sea, and the ship was in such stress and danger as to apparently justify the jettison of the deck-load, if not the entire cargo. In this state of the case, the libelant claims that the Hettie Ellis is still responsible, because she was brought to her position of peril by the fault and negligence of her master and crew. The facts seem to be, as far as they can be gathered from the evidence of the master and one of the crew, who were the only witnesses examined who had any knowledge of the actual circumstances, and who are apparently illiterate, ignorant sailors, with confused memories, that they had anchored every previous night of the voyage, although the weather was fair in safe places, but that on the night in question, which was dark and very foggy, and threatening to be stormy and tempestuous, they neglected to anchor behind Round island, as was usual and as other like vessels did, but attempted, with a square-bowed, flat-bottomed scow or barge, with a high deck load, and without land-marks in sight, to navigate an open sound full of shoals.

That the vessel and crew escaped at all from the stormy weather that prevailed is exceptional, and, notwithstanding the sarcastic comments of the learned proctor for claimants on "the supreme nerve, judgment, and infallible skill by which vessels are always navigated in court by lawyers," I feel compelled to find, in the present case, that the Hettie Ellis was brought into the peril of the sea which rendered the jettison necessary, if it was made, and if it was necessary, through the fault and negligence of the master and crew, and indirectly of the owner, who is responsible for such master and crew.

"There can be no doubt that a loss by a jettison occasioned by a peril of the sea is a loss by a peril of the sea. In that case the sea peril is deemed the proximate cause of the loss. But if a jettison of a cargo becomes necessary in consequence of any fault or breach of contract by the master or owners, the jettison is attributable to that fault or breach of contract, and not to sea peril, though that also may be present and enter into the case." See *Lawrence* v. *Minturn,* 17 How. 100, which case is invoked by proctors for both libelant and claimant, and the rule declared as above, I think, under the facts as I regard them, fixes the claimant's responsibility.

There is another view of this case that I am inclined to think equally settles the liability of the claimant, at least for a general average. Concede that the jettison was solely occasioned by a peril of the sea, and that the master and owner were without fault, and we have this case: a vessel built with a view of carrying the major part of cargo on deck, running in a trade where it is customary and necessary to load the major part of the cargo on deck, and such vessel, so built, so trading, and so loaded, is compelled, by peril of the sea, to jettison part of the cargo to save the ship and remaining cargo. In such a case is not the shipper whose goods have been so destroyed for the common safety entitled to just remuneration? In such a case the whole reason for exempting deck cargo from the benefit of general average fails, and the rule itself ought to fail.

Since 1837, in Great Britain, there has been a decided modification of the rules in relation to deck-loads. See Lowndes, Av. 32 *et seq.* In several cases cited there the right of deck cargo, under proper circumstances, to participate in general average, was recognized, notably in the case of *Johnson* v. *Chapman,* 19 C. B. (N. S.) 563, where it is said:

"This is an action by the shipper of the cargo against the ship-owner, and the charter-party contemplates a deck cargo. * * * Then immediately you find that the deck cargo is within the contemplation of the parties, you must deal with it as if shipping a deck cargo was lawful. When you have established that it is a deck cargo lawfully there by the contract of the parties it becomes subject to the rule of general average."

Macl. 665, says:

"Goods carried on deck give no claim to contribution, although thrown overboard for the common benefit, unless they were so stowed in accordance with a usage of the trade. This, if not the rule of English law, is at least the acknowledged rule of practice among mercantile men in this country."

And, after citing several cases, further says, page 667:

"The received opinion, therefore, now is that, by the law of this country, the jettison of deck cargo gives no claim to general average contribution, unless such mode of carriage is justified and sustained by a usage of the trade." See, also, Fland. Shipp. 237.

The supreme court of the United States, in *Lawrence* v. *Minturn, supra,* says on this subject:

"The extent to which we understand them (the authorities cited) to go, and the law which we intend to lay down, is this: that if the vessel is seaworthy to carry a cargo under deck, *and there was no general custom to carry such goods on deck, in such a voyage,* and the loss is to be attributed solely to the fact that the goods were on deck, and their owner had consented to their being there, he has no recourse against the master, owner, or vessel for a jettison rendered necessary for the common safety by a storm, though that storm, in all probability, would have produced no injurious effect on the vessel if not thus laden."

An attempt was made in this case to prove a custom in the trade not to give bills of lading, and exempting the ships from all liability for all goods where no bills of lading were given, and no matter how lost, or whether stowed on or under decks. As this alleged custom was not satisfactorily proved, and, if proven, would be of doubtful legality as an innovation on the laws relating to common carriers, and against public policy, I am of the opinion that in reason and upon the authorities cited, the shipper of the deck cargo on the Hettie Ellis ought to have relief against the vessel, even though the deck cargo may have been jettisoned in a peril of the sea for the common safety, and the master and owner were without fault. At all events, under the facts of this case, as developed by the evidence, I have no doubt that the judgment of the district judge, holding the Hettie Ellis liable, was in accordance with law and justice, and a decree having the effect of affirming that judgment will be entered.