## THE JOHN H. CANNON.

### HUNTING et al. v. THE JOHN H. CANNON.

*(District Court, D. Maryland.   June 13, 1892.)*

SHIPPING—GENERAL AVERAGE—USAGE OF PORT.
  *Held,* that there is no local usage in the port of Baltimore by which, in case of jettison of lumber cargo lawfully carried on deck, the vessel and freight are exempted from contributing in general average.

*(Syllabus by the Court.)*

In Admiralty.   Libel for contribution in general average of jettison of deck load of lumber.   Decree for contribution.

*Brown & Brune,* for libelants.

*Robert H. Smith,* for claimants.

MORRIS, District Judge.   This suit is brought by the owner of a deck load of lumber shipped on the schooner John H. Cannon, 200 tons, to recover from the vessel a contribution in general average on account of the jettison of part of the deck load for the benefit of the vessel and the rest of the cargo.   The libelant chartered the schooner to carry a cargo of lumber from South Carolina to Baltimore, and she received on board from him 574,050 shingles, and 35,147 feet of lumber, of which, as stated in the bill of lading, about 179,950 of the shingles were to be carried on deck.   It is admitted that there is a general usage of the lumber shipping trade between Baltimore and southern ports to carry part of the cargo on deck, and that in this case the deck cargo was lawfully carried there, both by the general usage and by the express agreement of the parties contained in the bill of lading and the charter party.   By stress of weather the schooner was driven into Hatteras inlet, where she grounded, and it became necessary to jettison the deck cargo, in order to lighten the ship, and save her and the rest of the cargo.

It is conceded that it is the general and uniform usage of all vessels in the lumber trade between Baltimore and southern ports to carry a portion of their lumber cargo on deck, and that this schooner was built with a view to that usage, and could not be profitably employed in that trade unless she carried a considerable deck load.   On behalf of the schooner it is not denied that ordinarily, whenever there is an established usage in any trade or on any class of vessels to carry cargo on deck, the vessel and freight are liable to contribute in general average if such deck cargo is jettisoned; but the defense to this libel is put solely upon the contention stated in the answer, that "it is a well-established, uniform, general, and notorious custom in the lumber trade in the port of Baltimore that in no case does the vessel or freight contribute in general average where the deck load is jettisoned; and that the libelant, being largely engaged in

the business in the port of Baltimore, was familiar with the usage, and contracted with the schooner with knowledge of the custom."

If there be such a local usage in the port of Baltimore, it is contrary to the general commercial law as administered in many, and I think most, other ports. In Lowndes on General Average, (page 62,) it is said:

"The law of deck-load jettison may be summed up as follows: A jettison of goods carried on deck is not made good by contribution, except where there is a general custom of the trade in a particular voyage to carry such loads. Such a custom there is with regard to the lumber trade from the Baltic and British North America."

See, also, *Gould* v. *Oliver*, 4 Bing. N. C. 134; *Johnson* v. *Chapman*, 115 E. C. L. 582; *Milward* v. *Hibbert*, 3 Q. B. 120; *Burton* v. *English*, 12 Q. B. Div. 218; *The William Gillum*, 2 Low. 154; *The Watchful*, 1 Brown, Adm. 469; *Wood* v. *Insurance Co.*, 8 Fed. Rep. 27; *Hazelton* v. *Insurance Co.*, 12 Fed. Rep. 159.

The sole question is whether there has been proved such an exception to the general rule by a local custom of the port of Baltimore as exempts the schooner in the present case. The testimony adduced is meager and not satisfactory. It appears that there has been within the experience of those familiar with the lumber trade in the port of Baltimore very few instances where the deck load has been jettisoned. In most instances, where the deck load has been lost, it has been reported as washed overboard by the sea, and very seldom as jettisoned. There is no witness called who can remember an instance in which the question has been mooted, and the alleged usage applied to decide it. Mr. Cunningham, an experienced average adjuster, member of a long-established firm in that business, is the principal witness, and he states that he thinks it is the usage, because he has no recollection of ever having made such an allowance in adjusting such a loss, and does not remember of ever hearing of such an allowance in the port of Baltimore. The other witnesses have no knowledge of any instance in which a loss of this class has been the subject of adjustment, and speak of the usage very much from what they have heard from Mr. Cunningham. The burden of proving the usage rests upon the respondents, and the testimony falls short of the proof required to establish a local usage which is contrary to the general principles of commercial law. The right to contribution in general average is a broad principle of equity, firmly fixed in the law merchant, and as far as possible its application should be governed by principle, and not depend on local usages. As to the usages of average adjusters, which do not contravene any general principles of law, but merely regulate the details of their application,—as, for instance, what particular expenditures are to be allowed, what commissions for collecting, how much for difference in value between new and old materials, how values are to be arrived at, what discounts are allowed, and usages as to similar matters which are constantly passed upon in stating an average adjustment, —it requires much less evidence to support a usage than to prove

a local usage opposed to the principles of the general law.    In the present case it would seem that what is spoken of as a usage was, in fact, rather the prevailing belief among underwriters and adjusters in Baltimore that the general law did not recognize the right to contribution for jettison of a deck cargo of lumber.    It was rather a local understanding of the general law than a local usage of trade, the cases being so few and infrequent that no usage could be said to be established by them.    In *Stewart* v. *Steamship Co.*, L. R. 8 Q. B. 88, 362, by the bill of lading it was stipulated that "average, if any, should be adjusted according to British custom."    By "British custom," as it had long existed, and was to be found stated in many published text-books on general average, damage to goods by water thrown to extinguish fire in an adjoining hold or compartment of the ship was not allowed for in general average.    This long-established British custom having, by express stipulation of the parties, been made part of the contract of affreightment, the court was obliged to apply it, although contrary to the principles of equity governing general average contribution.    The court, however, intimated that the practice was vicious, and unreasonable, and said:

"It is to be hoped in the future that there will be no difference between law and custom on this point, and that average adjusters will act on the law as now declared, and that bills of lading will also be framed in accordance with it."

These remarks indicate with what strictness courts should scrutinize the proof by which it is endeavored, as by the ship owners in this case, to fasten an exception upon the general law by setting up a local usage.    In my judgment, the proof in the present case is insufficient.    The underdeck cargo in the present case belonged to the libelant as well as the deck cargo, so there can be no question but that it must also contribute; and my ruling is that the ship, the freight, and underdeck cargo must all contribute in general average for the jettison of the deck load.