## LANGE v. GEORGE D. EMERY CO. et al.

Circuit Court of Appeals, Second Circuit.
April 4, 1927.

No. 222.

1. Shipping ⟨⟩193—Deck cargo loss by jettison, in trade in which deck cargo is customary, would be made good as general average, except under York-Antwerp Rules.

Where York-Antwerp Rules are not part of contract of affreightment, deck cargo loss by jettison, in trade in which deck cargo is customary, would have to be made good as general average.

2. Shipping ⟨⟩192—Damage to vessel incidental to jettison is part of loss by jettison coming into general average, except under York-Antwerp Rules.

Except under York-Antwerp Rules, damage to vessel incidental to jettison would be regarded as part of the loss by jettison, and would come within general average.

**3. Shipping** ⚛=>192—**Damage to ship's propeller and engines from jettisoned log, part of deck cargo, held part of general average under York-Antwerp rule 2.**

Where contract of affreightment incorporated York-Antwerp Rules, and where it became necessary, after stranding of vessel, to jettison deck cargo of logs, one of which, after being jettisoned, became jammed between propeller and stern frame, causing damage to ship, engines, and propeller, *held,* such damage was required to be made good as part of general average, under York-Antwerp rule No. 2, though loss of deck cargo was not made good under rule No. 1.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Ove Lange, trustee, against the George D. Emery Company and another. Decree for libelant, and respondents appeal. Affirmed.

This is a libel by the trustee under a general average agreement against George D. Emery Company and its guarantor, the Insurance Company of North America. The facts are agreed.

In February, 1914, the Emery Company shipped a full cargo of mahogany logs from Belize, British Honduras, to New York on the steamship Felix. Part of the cargo was stowed on deck. This was done partly to trim the ship and partly to secure additional freight, and accorded with a custom of the trade known to and acquiesced in by the shipper. The bill of lading issued by the master and accepted by the shipper contained the stipulation: "General average payable according to York-Antwerp Rules, and, as to matters not therein provided for, according to usages of port of New York."

During the voyage, the vessel stranded, and, in order to float her, the master jettisoned part of the deck cargo. One of the logs so jettisoned became jammed between the propeller and the stern frame, causing damage to the ship and her engines and propeller. Certain other damage to the vessel also occurred in making the jettison, but all without fault on the part of the ship or its officers or crew. A general average statement was prepared by average adjusters in New York City. No allowance was made, nor claimed, for the cargo jettisoned or for the freight thereon, but the vessel owner did claim contribution from the cargo owner for the damage suffered by the vessel and her equipment in the course of the jettison. This claim was sustained by the decree below, and the respondents appeal.

Bigham, Englar & Jones, of New York City (D. Roger Englar, and Martin P. Detels, both of New York City, of counsel), for appellants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Ira A. Campbell and Roger B. Siddall, both of New York City, of counsel), for appellee.

Before MANTON, HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). Rules I and II of the York-Antwerp Rules 1890, read as follows:

"Rule I—*Jettison of Deck Cargo.*—No jettison of deck cargo shall be made good as general average. Every structure not built in with the frame of the vessel shall be considered to be a part of the deck of the vessel.

"Rule II—*Damage by Jettison and Sacrifice for the Common Safety.*—Damage done to a ship and cargo, or either of them, by or in consequence of a sacrifice made for the common safety, and by water which goes down a ship's hatches opened or other opening made for the purpose of making a jettison for the common safety, shall be made good as general average."

[1, 2] Were the York-Antwerp Rules not part of the contract of affreightment, the cargo loss by jettison, in a trade in which deck cargo is customary, would have to be made good as general average. The Hettie Ellis (C. C.) 20 F. 507; The John H. Cannon (D. C.) 51 F. 46; Lowndes, General Average (6th Ed.) 74. Damage to the vessel incidental to the jettison would be regarded as part of the loss by jettison and would likewise come into general average. Lowndes, General Average (6th Ed.) 83; Columbian Insurance Co. v. Ashby and Stribling, 13 Peters, 331, 343, 10 L. Ed. 186.

[3] The York-Antwerp Rules, however, exclude the loss of deck cargo from being made good as general average. Appellants' contention is that the ship's damage incidental to the jettison is also excluded. Their argument is that, inasmuch as damage incidental to a jettison of cargo is included in general average when the cargo loss is included, so, conversely, when the cargo loss is excluded from general average all incidental damage should follow in its train. They assert that the language of rule I, "No jettison of deck cargo shall be made good as general average," shows an intention to exclude the act of jettison with all its consequences. Rule II they make harmonious with this interpretation by limiting rule II to damage done to jettison of underdeck cargo.

We cannot accede to this construction of the rules, not only because it seems to us to be a strained construction of the words used, but also because it would result, as suggested by counsel for appellee, in most inequitable consequences. Suppose, for illustration, that, in making a jettison of deck cargo, a hatch is torn off and water damages the underdeck cargo belonging to an owner different from the deck cargo owner. According to the construction proposed by appellants, no allowance could be made for damage to the underdeck cargo, since such damage was a consequence of the act of jettisoning deck cargo; hence excluded by rule I and not saved by rule II, which is limited to a jettison of underdeck cargo. This appears to us a shocking injustice to the owner of the underdeck cargo who has no control over the shipping of deck cargo or the terms upon which it shall be shipped.

On the other hand, if rule II is not so limited, the supposed damage to the under deck cargo would be protected by the phrase: "Damage done to * * * cargo * * * by or in consequence of a sacrifice made for the common safety * * * shall be made good as general average."

Appellants, however, contend that a sacrifice cannot be made for the common safety unless the sacrifice is one for which allowance is to be made in general average. This argument is based upon the premise that the Liverpool Conference of 1890, which adopted the York-Antwerp Rules of that year, intended to make no change in meaning of rule II of the York-Antwerp Rules of 1877. Counsel finds authority for this premise in the opinion of a German Case, The Skodsborg (Hansen v. Becker & Otten), decided by the Bremen Landgericht, and on appeal, by the Court of Appeals, and printed in the Hanseatische Gerichts Zeitung of February 7, 1901, No. 11. It may be mentioned in passing that the decision itself is directly opposed to the appellants' contention and is the only authority which has been found on the precise point. Rule II of 1877 (Lowndes, General Average [6th Ed.] 807) reads:

"Damage done to goods or merchandise by water which unavoidably goes down a ship's hatches opened, or other opening made, for the purpose of making a jettison, shall be made good as general average in case the loss by jettison is so made good.

"Damage done by breakage and chafing or otherwise from derangement of stowage consequent upon a jettison shall be made good as general average in case the jettison is so made good."

By comparing rule II of 1890 with the above, it is apparent that the phrase, "for the common safety," was twice substituted for the phrase, "in case the loss by jettison is so made good," which appeared in the earlier rule. We do not see how we can ignore such a change of language or say that the framers of the later rule intended no change in meaning. "Sacrifice for the common safety" is a phrase naturally adapted to include any jettison made to avert a common physical peril which threatens the whole venture. The question concerns the meaning of ordinary words; we should think, for example, that the jettison of the prophet in Holy Writ was probably regarded by the crew as a sacrifice for the common safety, however it appeared to the victim himself, despite his subsequent bizarre adventures. Moreover, the jettison of a portion of the deck cargo may be deemed for the common benefit of all persons interested in the venture, including the deck cargo owner himself, the balance of whose cargo may be saved by the sacrifice of the portion cast overboard.

On the whole, we are satisfied that rule II covers damage to the ship caused by a jettison of deck cargo, and the decree is affirmed with costs to appellee.

MANTON, Circuit Judge (dissenting). The appellant, Emery Company, shipped a full cargo of mahogany logs from Belize, British Honduras, to New York on the steamship Felix, in February, 1914. The vessel stranded during the voyage, and, in order to float her, it was necessary to jettison part of the deck cargo. The Felix was floated in the course of the jettison, but some damage was done to her hull and machinery. A general average was prepared by average adjusters in New York City. No allowance was made in this adjustment for the cargo jettisoned but an allowance was made in the court below, in favor of the shipowner, for the damage to the vessel and her equipment in the course of the jettison. The Insurance Company of North America guaranteed payment of any general average which might be due. Appellants appeal from that part of the decree which makes the allowance for damage to the ship, contending that it was not recoverable as general average.

The deck cargo was carried under a contract of affreightment which referred to the York-Antwerp Rules, as follows: "General average payable according to York-Antwerp Rules, and as to matters not therein provided for, according to the usages of the port of New York." It was also stipulated

to have been shipped as deck cargo in accordance with the custom and usage of the trade. In the absence of the application of the York-Antwerp Rules, if shipped in accordance with this custom, the deck cargo loss would have been the subject of contribution in general average. The Hettie Ellis (C. C.) 20 F. 507; John H. Cannon (D. C.) 51 F. 46. But rule I of the York-Antwerp Rules of 1890 reads:

*"Jettison of Deck Cargo.*—No jettison of deck cargo shall be made good as general average. Every structure not built in with the frame of the vessel shall be considered to be a part of the deck of the vessel."

However, under the title of "Damage by Jettison and Sacrifice for the Common Safety," rule II provides:

"Damage done to a ship and cargo, or either of them, by or in consequence of a sacrifice made for the common safety, and by water which goes down a ship's hatches opened or other opening made for the purpose of making a jettison for the common safety, shall be made good as general average."

Because of this rule, the court below allowed the vessel owner to recover as general average, the damage to the vessel caused by the jettison of the deck cargo.

The authorities speaking on this subject consistently state that damages which are considered incidental to a jettison—that is to say, that the jettison cannot be made without incurring them—are regarded as part of the loss sustained by jettison, and are included in the general average. Gourlie on General Average, p. 109; Lowndes on General Average (6th Ed.) 83. It is the rule to allow the loss of freight in general average where caused by an act of sacrifice of the cargo, if the jettison of the cargo is allowable in general average. Columbian Insurance Co. v. Ashby, 13 Pet., 331, 10 L. Ed. 186; Re Nathanial Hooper, Fed. Cas. No. 10032, 3 Sumn. 542. If goods or the ship are damaged "by reason of the opening of the hatches to throw the cargo overboard or from seas which break over the deck, all such damage is properly and in practice made the subject of general average being the necessary consequence of the measure of safety. The rule is as old as the Roman law and may be regarded as universally accepted." And "damage which is incidental to the jettison—that is, a jettison which cannot be made without incurring it—must be regarded as part of the laws of jettison and included in the general average." Lowndes on General Average, p. 83. It may be re-

garded as settled that, if the cargo jettisoned is to be contributed for as general average, then the damages suffered by the vessel in such jettison are to be contributed for in the same general average. The appellant argues that it should be equally clear that, if the cargo jettisoned is not to be contributed for in general average, then the damage to the vessel incidental to that jettison and a part of the loss by jettisoning cannot be considered in general average. Nor does rule II make possible such a recovery. The reason for allowing the vessel to share in general average recovery is based upon principles of equity and natural justice. McAndrews v. Thatcher, 3 Wall. 347, 18 L. Ed. 155; Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742; Burton v. English, 12 Q. B. D. 218. The rights involved must be considered from the viewpoint of equity. General average is a contribution by all the parties in a sea adventure, to make good the loss sustained by one of their number on account of the sacrifice voluntarily made on the part of the ship or cargo to save the remainder and from an impending peril or extraordinary expenses necessarily incurred by one or more of the parties for the general benefit of all interested embarking in the adventure. Barnard v. Adams, 10 How. 270, 13 L. Ed. 417. If the cargo jettisoned is not to be considered in general average, the damage to the vessel is of necessity collateral to the jettisoning of the goods. Unless there is a jettisoning for common safety, there is no common sacrifice, and no general average doctrine of contribution may be invoked. There is no legal cause which produces the reason for invoking the principle of general average. Rule I expressly excuses where deck cargo is jettisoned. It does not merely excuse contribution for the benefit of the cargo owner by signaling out the cargo owner's loss for elimination from general average, but it refers to the jettisoning of deck cargo with all that the phrase means. It is the act of jettisoning with all its consequences. It is not merely one of them, for the rule does not so provide.

Rule II and the other York-Antwerp Rules deal with the consequences of the act of jettisoning and specify in each instance what consequences are included within the scope of each rule, and to what interest the cargo or freight or either of them applies. For example, rule III refers to damage to the ship or cargo or either of them by water or otherwise in the extinguishing of fire on board the ship, and directs that such shall be made good as general average. It does not

merely provide that extinguishing a fire on board ship shall be made good. Rule V refers to loss or damage caused "to the ship, cargo, or freight or any of them" and that "intentional running on shore shall be made good as general average." Rule VI provides damage to or a loss of sails or spars or either of them shall be made good. And no loss or damage caused to the ship cargo or freight or any of them shall be made good. Rule VII provides that damage caused to machinery or boilers of the ship shall be allowed in general average; rule IX, cargo, ship's materials, and stores, or any of them, shall be deemed as general average; rule XII, damage done to a ship or cargo—thus showing an intent by each rule to specify items of damage and by the effect of the language chosen not to exclude the act of jettison with all its consequences but merely selecting one or more of them.

Below it is said that rule II could not by any reasonable implication be limited to a jettison of cargo other than deck cargo, and it was said: "All damage occasioned by a sacrifice for the common safety must be made good. To limit its application to a jettison of cargo which must itself be made good would violate the rule." Rule I by its title refers to a jettison of the deck cargo, and, if it be clear that there can be no recovery for such loss in general average because of the act of jettison, rule II can only deal with a jettison of other than deck cargo in so far as it deals with jettisoning at all, and the type of jettison specifically referred to in rule II appears from its wording to refer to underdeck cargo, for it is phrased: "A ship's hatches opened or other opening made for the purpose of making a jettison." Since rule I deals with deck cargo, and rule II specifies, as much as it indicates anything, underdeck cargo, there is no liable damage as general average "occasioned by a sacrifice for the common safety" which "must be made good." There is no limiting "its obligation to a jettison of cargo which must itself be made good."

The deck cargo was jettisoned for the purpose of saving the rest of the adventure. The cargo owner can have no contribution for his loss. Although the sacrifice is made by him for such benefit without compensation, the vessel owner asks for a further sacrifice by him by way of contribution for damages done his vessel while jettisoning the deck cargo. Such a claim lacks every essential quality of an equitable demand. It would be a contradiction of terms to permit a ship owner to recover contribution from the cargo owner in respect to general average sacrifice without, on his part, contributing to the general average. The Jason, 225 U. S. 32, 32 S. Ct. 560, 56 L. Ed. 969. Rule II should not be construed to work out inequity between the parties. Any other construction in violation thereof should be avoided if possible and only accepted where the rule is plain. One of the persuasive reasons for rule I is to relieve the underdeck cargo from any and all consequences of the hazard jointly accepted by the deck cargo and the vessel when the owner of the latter sees fit to earn more hire by deck stowage. The vessel owner, for more freight money, accepts the deck cargo and to some extent jeopardizes the safety of the underdeck cargo. Strang v. Scott (1889) 14 Appeal Cases, 609. The deck cargo owner owes no duty to the underdeck cargo, but the vessel does in providing a seaworthy vessel and properly navigated to destination. Rule II could not, with intent so to do, expect general average contribution for damages sustained by relieving the ship of a hindrance to navigation which the vessel owner accepts, in most instances, without the consent of the underdeck cargo. Wright v. Marwood (1881) 7 Q. B. D. 62.

But it is said that the change of rule II of the York-Antwerp Rules of 1877 to the present reading (1890), indicates an intention of allowing recovery as had below. The present rule II merely extends the right of the ship, in addition to the cargo, to share in the contribution of general average where it is allowed in the case of a jettison for the common safety. In the case of Hansen v. Becker & Otten, decided by Bremen Landgericht, and on appeal in the Court of Appeals, Hanseatische Gerichtszeitung, February, 1901, No. 11 (which was not the court of last resort of Germany), the view expressed below was sustained. That decision attempts to show that the 1890 rules as agreed upon were not intended to make any change in the effect of rule II, and it points out that the 1890 conference intended that there should be a general average where the sacrifice is made for the common safety. With the intention, as suggested by that court, to have the words "for the common safety" the equivalent of the expression used in the earlier rules, namely, "in case the loss by jettison is so made good," it is difficult to see how damages sustained by a ship can be compensated for if the cargo jettison may not be regarded as in a contribution as general average. To be within the expression "for the common safety" anticipates some act of jettisoning for which compensation may be

awarded. If there is to be no contribution for jettisoning the deck cargo, there can be no general average for damage to the ship. No allowance in general average against the deck cargo owner should be granted.

I dissent.